**TIGER TRASH, a Division of Joe W. Morgan, Inc., Plaintiff-Appellant,**

v.

**BROWNING–FERRIS INDUSTRIES, INC., and Browning-Ferris Industries of Indiana, Inc., Defendants-Appellees.**

No. 76–2259.

United States Court of Appeals, Seventh Circuit.

Heard June 2, 1977.

Decided Aug. 18, 1977.

Alan N. Shovers, Evansville, Ind., for plaintiff-appellant.

Gerald H. Evans, Evansville, Ind., Stephen W. Terry, Jr., Indianapolis, Ind., for defendants-appellees.

Before CUMMINGS, SPRECHER and TONE, Circuit Judges.

CUMMINGS, Circuit Judge.

In the first two counts of its amended complaint filed on February 20, 1976, plaintiff, which is engaged in the solid refuse collection service business in Evansville, Indiana, and Henderson, Kentucky, alleges that defendant, Browning-Ferris Industries of Indiana, Inc. (BFI Indiana) of Evansville, Indiana, and its parent corporation, Browning-Ferris Industries, Inc. (BFI) of Houston, Texas, engaged in an attempt to monopolize the Evansville-Henderson market by using certain restraints on competition in violation of Section 2 of the Sherman Act (15 U.S.C. § 2). The third count alleges a violation of similar provisions of the Indiana Antitrust Act (Ind.Ann.Stat. §§ 24–1–2–2 and 24–1–2–7). BFI, a Delaware corporation with its principal place of business in Houston, Texas, is engaged in the business of solid waste collection, processing, recovery and disposal. BFI, a parent holding company, operates through a large number of wholly owned subsidiaries, one of which is BFI Indiana. The fourth count of the complaint, which charges only BFI, alleges a violation of Section 7 of the Clayton Act (15 U.S.C. § 18). Like plaintiff, BFI Indiana collects and disposes solid waste refuse for industry, commercial establishments, restaurants, and apartments in Evansville, Indiana, and Henderson, Kentucky. Jurisdiction was based on 28 U.S.C. § 1337.

On October 30, 1975, BFI filed a motion to dismiss or to quash the return of service of summons upon it in Houston, Texas resulting from the July 14, 1975 filing of plaintiff's original complaint, on the ground that the district court lacked personal jurisdiction over BFI because it "is not an in-habitant of, cannot be found in, and does not transact business in the State of Indiana" and therefore is not subject to suit in the Southern District of Indiana under Section 12 of the Clayton Act (15 U.S.C. § 22).[1] BFI also asserted in the same motion that it was not subject to the pendent Indiana "long-arm" personal jurisdiction of the district court below under the Indiana Antitrust Act because it "does not do business in the State of Indiana and has not supplied or contracted to supply services of any kind or goods or material of any kind in the State of Indiana * * *.". The motion was accompanied by a supporting affidavit of BFI vice president Stephen L. Thomas.

Also on October 30, 1975, BFI Indiana answered the original one-count complaint based on Section 2 of the Sherman Act. In addition to denying the material allegations of the complaint, BFI Indiana counterclaimed against plaintiff on a Section 2 theory, and in two pendent counts based on Ind.Ann.Stat. §§ 24–1–2–2 and a separate claim for tortious interference with its customers. Plaintiff filed its answer to BFI Indiana's counterclaims on December 4, 1975. BFI Indiana answered the amended complaint on March 15, 1976 and additional and amended counterclaims were tendered on May 12, 1976. BFI Indiana filed a motion on February 25, 1976, for a summary judgment dismissing the first three counts of the amended complaint on the ground that plaintiff did not properly define the relevant service market or on the alternate ground that "there is no dangerous probability that the alleged attempt to monopolize could be successful * * *." An additional ground for the motion as to Counts I and II was that "Any alleged attempt to monopolize trade would not have an appreciable effect on interstate commerce * *." The motion was accompanied by a supporting affidavit of Harold Post, vice president of BFI Indiana.

---

1. Section 12 of the Clayton Act provides:

"Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

After further affidavits were filed and certain limited discovery took place, the district court granted BFI's motion to dismiss it from the lawsuit for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Simultaneously, summary judgment was granted to BFI Indiana. This October 12, 1976, order of the court was accompanied by an unreported memorandum opinion. In his opinion, Judge Noland held BFI did not transact business within the Southern District of Indiana and therefore was not amenable to suit under Section 12 of the Clayton Act.[2] With respect to the summary judgment motion of BFI Indiana, the district court refused to hold that it does not have the potential to acquire monopolistic control in the Evansville-Henderson market area because too many factual questions were still present. However, summary judgment was accorded to BFI Indiana as to both Sherman Act counts on the ground that its activities do not have an appreciable effect on interstate commerce. Pendent Count III was dismissed because of the dismissal of the two federal counts.

Five and one-half months before handing down the aforesaid opinion, a district court magistrate had stayed the requirement of any response by BFI to certain interrogatories filed by plaintiff and stayed all discovery against BFI Indiana until the court could rule on the defendants' respective motions to dismiss and for summary judgment. The appeal challenges these discovery rulings as well as the order granting BFI's motion to dismiss and BFI Indiana's motion for summary judgment. We reverse and remand.

*Venue of Suit Against BFI*

▪▪▪ Under Section 12 of the Clayton Act, BFI, the parent corporation, would be amenable to suit in the Southern District of Indiana if it transacts business there. See note 1 *supra*. Service of process upon BFI at its home office in Houston, Texas, was of course proper under Section 12 because it permits service "in the district of which it [an antitrust defendant corporation] is an inhabitant, or wherever it may be found."

Plaintiff correctly asserts that the issue under Section 12 of the Clayton Act is whether BFI exercised sufficient control over its Indiana subsidiary to cause the parent to "transact business" in Indiana within the special venue provision of the Clayton Act. Plaintiff first contends that the district court should have considered the presence in Indiana of "an officer of BFI's Waste Systems Division who was participating in the day to day type of sales program with customers and signing [a number of] contracts [in Indiana] on behalf of BFI Indiana" (Br. 20). BFI's answer to plaintiff's request for admission admitted that one Gerd Henson, who was not an employee of BFI Indiana, had been a Regional Sales Manager "in the Waste Systems Division" and had entered Indiana in July 1975 to solicit sales and service agreements for BFI Indiana, and defendants' brief concedes that Henson was a regional sales manager of BFI (Br. 8, 25, 26). Although only one BFI service agreement executed by Henson in Indiana was attached to plaintiff's request for admissions, paragraph 9 of defendants' response admits that he solicited other sales and service agreements for BFI Indiana. This is of course an indication of a control relationship between parent and subsidiary.

In its memorandum opinion, the district court concluded that there was "more than a casual relationship between BFI and BFI Ind[iana]" (Mem. op. 3). To support this conclusion, the court found:

No constitutional objections to *in personam* jurisdiction over BFI are asserted, assuming venue to be proper, and we perceive none. *McBreen v. Beech Aircraft Corp.*, 543 F.2d 26 (7th Cir. 1976); see *United States v. Scophony Corp.*, 333 U.S. 795, 803–804 and n. 13, 68 S.Ct. 855, 92 L.Ed. 1091.

---

**2.** The district court also ruled that plaintiff could not acquire jurisdiction over the federal or state claims against BFI by means of the Indiana long-arm statute (Trial Rule 4.4(A) of the Indiana Rules of Procedure). This ruling is not challenged on appeal. The district court's dismissal is limited to personal jurisdiction in the venue rather than the due process sense.

"Certain of the officers of BFI–Ind. are also officers of BFI. Consolidated financial statements and tax returns are filed by BFI and its subsidiaries. The parent initiates management training and development programs for its subsidiaries, although BFI–Ind. asserts that it does not utilize the program. Division Regional officers of BFI assist in the activities of the subsidiaries in their respective local regions. National marketing programs are carried on by BFI to enhance the promotional efforts of their local operations. To this end, it appears that neither BFI nor BFI–Ind. make a determined effort to notify the public that they are separate entities. That is to say, both BFI and BFI–Ind. conduct their advertising and promotional activities in such a manner so as to give the appearance of one company operating nationwide to provide waste removal services. Also, additional services, such as the lending of money for capital improvements, are also provided by BFI to its subsidiaries." (*Idem*)

Development of the ability to provide a single source of reliable waste services for companies with a number of geographically dispersed plants is an integral part of BFI's corporate policy. BFI officers, some of whom are officers of BFI Indiana, assist the subsidiary through national marketing programs, signing up customers, making basic market development decisions and assisting in supervising the subsidiary by allocating financial resources, providing finances, systems accounting, management supervision and examination and setting standards for return on capital investment from the subsidiary. If a subsidiary's rate of return does not meet BFI standards, BFI imposes corrective action. Also, BFI Indiana licenses and utilizes the parent's trade names without complying with Ind.Ann. Stat. § 23–15–1–1 which requires registration of a trade name.

We agree with BFI that a parent-subsidiary relationship consisting of mere investment holding by the parent would not be sufficient to bring it within Section 12 of the Clayton Act. See, *e. g., O.S.C. Corp. v.* *Toshiba America, Inc.,* 491 F.2d 1064 (9th Cir. 1974). Similarly, limited interorganizational activities such as record reporting or monitoring activities would not suffice. See, *e. g., Fisher Banking Co. v. Continental Baking Corp.,* 238 F.Supp. 322 (D.Utah 1965). Nevertheless, this record establishes that there is enough control and direction from parent to subsidiary to make the parent amenable to suit in the Southern District of Indiana.

The leading case under Section 12 of the Clayton Act is *United States v. Scophony Corp.,* 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091. As the Court observed, Congress enacted Section 12 of the Clayton Act to enlarge the jurisdiction given by Section 7 of the Sherman Act (26 Stat. 210), which provided for suit in the district in which a corporate defendant "resides or is found." The Court construed the phrase "transacts business" in Section 12 of the Clayton Act as conveying "a much broader meaning for establishing venue than the concept of 'carrying on business' denoted by 'found' under [Section 7 of the Sherman Act] and [the] decisions [thereunder]." 333 U.S. at 804–807, 68 S.Ct. at 861.

In *Scophony*, Justice Rutledge explained that in *Eastman Co. v. Southern Photo Company,* 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684, the Court had sloughed off highly technical distinctions glossed upon "found" in Section 7 of the Sherman Act and had substituted "the practical and broader business conception of engaging in any substantial business operations" (333 U.S. at 807, 68 S.Ct. at 861). In *Eastman*, venue was held to have been established under Section 12 of the Clayton Act because Eastman was engaged " 'not only in selling and shipping its goods to dealers within the Georgia district, but also in soliciting orders therein through its salesmen and promoting the demand of its goods through its demonstrators for the purpose of increasing its sales . . . .' " even though its business might be entirely interstate in character and transacted by agents not resident within the district (333 U.S. 808 n. 18, 68 S.Ct. 862). In language applicable here, the *Sco-*

*phony* opinion described the *Eastman* decision as follows:

"Thus, by substituting practical, business conceptions for the previous hairsplitting legal technicalities encrusted upon the 'found'-'present'-'carrying-on-business' sequence, the Court yielded to and made effective Congress' remedial purpose. Thereby it relieved persons injured through corporation violations of the antitrust laws from the 'often insuperable obstacle' of resorting to distant forums for redress of wrongs done in the places of their business or residence. A foreign corporation no longer could come to a district, perpetrate there the injuries outlawed, and then by retreating or even without retreating to its headquarters defeat or delay the retribution due." (Footnote omitted; 333 U.S. at 808, 68 S.Ct. at 862)

As in *Scophony*, to say on this record that BFI did not transact business in the Southern District of Indiana during the period in question would be to disregard the practical, nontechnical business standard supplied by the phrase "transacts business" in the Clayton Act venue provision. 333 U.S. at 810, 68 S.Ct. 855. In our judgment, the facts shown of record are sufficient to support venue in the Southern District of Indiana as to BFI. *Scophony Corp., supra* at 810–818, 68 S.Ct. 855; *Flank Oil Co. v. Continental Oil Co.*, 277 F.Supp. 357 (D.Colo.1967); *Call Carl, Inc. v. BP. Oil Corporation*, 391 F.Supp. 367 (D.Md.1975); *Luria Steel and Trading Corp. v. Ogden Corp.*, 327 F.Supp. 1345 (E.D.Pa.1971); *Grappone Inc. v. Subaru of America, Inc.*, 403 F.Supp. 123 (D.N.H.1975). Although a judgment must be made in the total factual setting, *i. e.*, what the subsidiary does for itself and what the parent does for the subsidiary, once a sufficient level of control is established, the fact that the subsidiary is not controlled to an ultimate degree is irrelevant to the decision to pierce the corporate veil for venue purposes. Therefore, we will not discuss the countervailing facts relied upon by BFI.

Since 1969, BFI has pursued the goal of building a nationwide waste system company primarily through the means of acquiring existing businesses with a history of successful operation in the waste systems industry. BFI's construction of Section 12 of the Clayton Act would enable large American corporations like itself to circumvent the antitrust laws by incorporating the many functional subparts of the parent into local operations. This would thwart the Congressional intent to liberalize the restrictive venue provision in Section 7 of the Sherman Act by enacting Section 12 of the Clayton Act. *Scophony Corp., supra*, 333 U.S. at 808–809 n. 19, 68 S.Ct. 855. Because the revealed intercompany relations of BFI to BFI Indiana are sufficient to satisfy venue under the Clayton Act, it is unnecessary to consider whether the district court's April 27, 1976, orders staying plaintiff's venue discovery were proper.[3]

### Monopolization of Interstate Commerce

In order for Section 2 of the Sherman Act to apply to BFI Indiana, it would have to be monopolizing, attempting to monopolize or combining or conspiring with another to monopolize "any part of the trade or commerce among the several States * * *." 15 U.S.C. § 2. Plaintiff submits that since it and BFI Indiana are competing in interstate commerce in the same market, the district court erroneously granted BFI Indiana's motion for summary judgment on the subject matter jurisdictional issue.

▇ As to interstate commerce, the amended complaint alleges that the defendants, within the Southern District of Indiana, are engaged in and transact business in interstate commerce. The complaint also discloses that plaintiff also operates in interstate commerce. The relevant interstate product market described in the complaint is the Evansville, Indiana-Henderson, Kentucky, solid waste disposal market. De-

---

**3.** As will be seen, monopolization of interstate commerce has been sufficiently alleged. Consequently it is also unnecessary to consider

whether the same orders staying plaintiff's interstate commerce discovery were proper.

fendants are said to have attempted to monopolize that interstate market, so that plaintiff may be forced to discontinue its operations in that interstate marketplace. In view of such allegations, defendants' argument that plaintiff raised Tiger Trash's interstate activity for the first time on appeal must be rejected. The various other pleadings, affidavits and Statement of Genuine Issues filed below also demonstrate that plaintiff has been complaining from the beginning about defendants' impact on competition with plaintiff in an interstate marketplace. Of course, at trial, defendants may be able to show that any restraints exerted by them did not affect "any part of * * * the trade or commerce among the several States" within the meaning of Section 2 of the Sherman Act. *Hospital Building Co. v. Rex Hospital Trustees*, 425 U.S. 738, 747 n. 5, 96 S.Ct. 1848, 48 L.Ed.2d 338. Thus far, as we now demonstrate, they have not carried that burden.

Both plaintiff and BFI Indiana are engaged in the refuse business in Evansville, Indiana, and Henderson, Kentucky. The undisputed facts show that BFI Indiana has 20 customer accounts in Henderson, Kentucky, generating business amounting to 3–4% of the dollar volume obtained by it in Evansville, Indiana. Five per cent in number of BFI Indiana's accounts are located within Kentucky, and it advertises its services in the Henderson classified telephone directory. It maintains $6,000 worth of equipment (the total market value of all of BFI Indiana's equipment is $1,000,000) permanently in Kentucky and uses $100,000 worth of equipment there. Its Kentucky revenues amount to $30,000 per year. When BFI Indiana collects trash in Henderson, it deposits the trash in a landfill located in Kentucky rather than transporting it back to Indiana. Its Answer admits that it competes with plaintiff in the interstate marketplace of Henderson-Evansville. In 1975, plaintiff and BFI Indiana each had a 21% share of that market (D.Br. 10).

Two broad tests have developed to determine whether subject matter jurisdiction over a substantive Sherman Act claim

exists. "[R]estraints on trade that are motivated by a desire to limit interstate commerce or that have their sole impact on interstate commerce" are enough to establish jurisdiction. *Hospital Building Co. v. Rex Hospital Trustees*, 425 U.S. 738, 743, 96 S.Ct. 1848, 1852, 48 L.Ed.2d 338. This, the so-called "in commerce" test, looks to see if the relevant product market upon which the substantive claims have impinged is interstate in its geographic aspect. If the relevant product market is not itself interstate in its geographic aspect but a defendant's servicing of the market has incidental interstate attributes, subject matter jurisdiction might still be found, but it cannot be under the "in commerce" test. In such a case, inquiry shifts to a determination whether "the restraint in question 'substantially and adversely affects interstate commerce'." *Hospital Building, supra*, at 743, 96 S.Ct. at 1852. This second condition is also sufficient to establish the interstate commerce nexus required for Sherman Act coverage.

In this case, plaintiff expressly relies solely on the "in commerce" jurisdictional test. Here $30,000 is generated in the interstate product market by defendant BFI Indiana. Whether or not the "in commerce" test, as we have defined it, can admit of an exception predicated on the existence of more than a *de minimis* amount of interstate commerce being involved need not be decided because $30,000 of interstate commerce would certainly be more than any required minimal amount. After *United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533, 558, 64 S.Ct. 1162, 88 L.Ed. 1440, it has been clear that in enacting the Sherman Act Congress wished to push to the utmost its plenary constitutional power over interstate commerce and, ever since *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122, the scope of this power has been known to be remarkably expansive. Subsequently, Justice Jackson, who authored *Wickard*, expressed the applicable principle in a nutshell in *United States v. Women's Sportswear Ass'n*, 336 U.S. 460, 464, 69 S.Ct. 714, 716, 93 L.Ed. 805:

"If it is interstate commerce that feels the pinch, it does not matter how local the operation which applies the squeeze."

■ Nor does the small size of the interstate commerce upon which the anticompetitive restraints impinge defeat a Section 2 claim on the merits. Addressing itself to the question of monopolization under Section 2 of the Sherman Act, in *Klor's v. Broadway-Hale Stores*, 359 U.S. 207, 213, 79 S.Ct. 705, 710, 3 L.Ed.2d 741, the Supreme Court, through Justice Black, reminded us that the size of the victim ousted from the interstate product market, here Tiger Trash, is immaterial. As he stated:

"As such it [the combination] is not to be tolerated merely because the victim is just one merchant whose business is so small that his destruction makes little difference to the economy. Monopoly can as surely thrive by the elimination of such small businessmen, one at a time, as it can by driving them out in large groups." (Footnote omitted.)

As in *Klor's*, plaintiff might show that through its nationwide subsidiaries, BFI seeks to eliminate its competitors one by one throughout the United States.

■ Although the "substantial effect" test was not relied on by plaintiff, we note, in discharge of our affirmative duty to determine subject matter jurisdiction, that this test is also met. Just a year ago in *Hospital Building Co. v. Rex Hospital Trustees*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338, the Supreme Court renewed its disapproval of decisions dismissing Sherman Act complaints on the ground that they charge local restraint and monopoly. As explained there, it is unnecessary for an antitrust plaintiff to allege the defendant "had the purposeful goal of affecting interstate commerce" (425 U.S. at 745, 96 S.Ct. at 1853) or that "the conspiracy threaten[s] the demise of out-of-state businesses or that the conspiracy affect[s] market prices" (425 U.S. at 746, 96 S.Ct. at 1853). Plaintiff Tiger Trash may be able to prove that defendants' monopolization caused an effect on interstate commerce "that is more than merely inconsequential". *Woods Explora-*

*tion & Producing Co. v. Aluminum Co. of America*, 438 F.2d 1286, 1303 (5th Cir. 1971), certiorari denied, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736. Since the relation of the alleged restraints to interstate commerce and their effect upon it are not "clearly nonexistent," summary judgment for BFI Indiana was inappropriate. *A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Ass'n*, 484 F.2d 751, 759 (7th Cir. 1973), certiorari denied, 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755; *Rasmussen v. American Dairy Ass'n*, 472 F.2d 517 (9th Cir. 1973). Under this "concededly rigorous standard we conclude that the instant case is not one in which dismissal should have been granted." *Hospital Building, supra*, 425 U.S. at 746–747, 96 S.Ct. at 1853.

■ On this record, defendants have not persuaded as that a significant or appreciable segment of interstate commerce was not involved in this alleged attempt to monopolize. At this stage, plaintiff has adequately charged that a sufficient part of interstate commerce, namely the Evansville-Henderson market for refuse disposal, was affected. See *United States v. Yellow Cab Co.*, 332 U.S. 218, 225, 67 S.Ct. 1560, 91 L.Ed. 2010; *United States v. Columbia Steel Co.*, 334 U.S. 495, 519, 68 S.Ct. 1107, 92 L.Ed. 1533. What the proofs will show is another matter, but at least plaintiff must be permitted to show (if it can) that an interstate market, the Henderson-Evansville area, was being monopolized by defendants. *Hospital Building, supra*, 425 U.S. at 747 n. 5, 96 S.Ct. 1848.

■ Because plaintiff's briefs do not question the dismissal of Indiana antitrust Count III, we do not address it here except to say that if the plaintiff wishes to press this pendent state claim, it is now free to do so. As a matter of judicial economy, the district judge should consider pendent Count III along with the two federal Counts. *Davis v. Murphy*, 559 F.2d 1098, 1102 (7th Cir. 1977).

■ The amended complaint also contains Count IV brought against BFI under

the anti-merger provisions of Section 7 of the Clayton Act (15 U.S.C. § 18). This count was not the subject of BFI Indiana's motion for summary judgment and has not been mentioned in the briefs or oral argument, possibly indicating that it has been dropped. If plaintiff intends to press Count IV, defendants will not be able to secure pretrial dismissal on commerce grounds, for BFI, the sole defendant in Count IV, is clearly "engaged in commerce," the two acquired corporations were allegedly engaged in interstate commerce, and "the effect of such acquisition may be substantially to lessen the competition, or to tend to create a monopoly * * * in any line of commerce in any section of the country" within the meaning of Section 7. *United States v. American Bldg. Maintenance Indus.*, 422 U.S. 271, 95 S.Ct. 2150, 45 L.Ed.2d 177; *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 194–195, 95 S.Ct. 392, 42 L.Ed.2d 378. Without foreclosing any defenses, we hold that Count IV at least states a claim under Section 7 of the Clayton Act.

Reversed and remanded with directions to permit discovery to proceed forthwith.