512 F.Supp. 810 (1981)
Gordon A. HEILLE, individually and d/b/a Trashmasters, Plaintiff,
v.
CITY OF ST. PAUL, MINNESOTA, a municipal corporation, Defendant.
Civ. No. 3-80-82.
United States District Court, D. Minnesota, Third Division.
April 8, 1981.
*811 Theodore J. Collins and Thomas J. Germscheid, Collins, Buckley, Sauntry & Haugh, St. Paul, Minn., for plaintiff.
Edward P. Starr, City Atty. and David W. Nord, Asst. City Atty., St. Paul, Minn., for defendant.

MEMORANDUM & ORDER
DEVITT, Chief Judge.
Plaintiff, formerly a rubbish collector in St. Paul, filed this action against the City of St. Paul alleging that the city, by entering the solid waste collection business and underpricing its service, violated federal and state antitrust laws, deprived plaintiff of his property without due process and violated plaintiff's equal protection rights. This action is now before the court on defendant's motion to dismiss all counts for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed.R.Civ.P.
Plaintiff's federal antitrust claim is DISMISSED for lack of subject matter jurisdiction, the remaining counts are DISMISSED for failure to state a claim upon which relief can be granted.
The parties submitted a stipulation of facts. Construing those facts, the facts shown by pretrial discovery, and the allegations in the pleadings in the light most favorable to plaintiff, it appears that plaintiff was in the business of hauling rubbish in the city of St. Paul between 1956 and 1980. In 1970 he had one truck which served approximately 2000 residential and 4 commercial customers. At that time the city was serviced by approximately 96 rubbish haulers using approximately 164 trucks. In 1971 the city, pursuant to an ordinance, entered the solid waste collection business. The ordinance established rates for the collection of solid waste and further provided a subsidy to senior citizens, widows and other low income families. That subsidy was available only to customers of defendant. Defendant terminated its solid waste collection business in March 1980. Defendant lost money in each year it was in business; the losses were made up by general revenue taxes. In 1979, the last full year in which it was in business, the city had 16,740 accounts. Plaintiff alleges that defendant's predatory pricing practices caused plaintiff to lose approximately 700 customers. The suit was filed on January 20, 1980; discovery was completed on January 20, 1981.
Defendant argues that plaintiff's complaint fails to state a claim under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 because hauling rubbish in St. Paul is neither "in commerce" nor "affects commerce."[1] With respect to the § 1983 claims, defendant argues that plaintiff has failed to establish either the necessary life, liberty or property interest or that plaintiff was treated any differently than any other persons.
The issue here is whether plaintiff has sufficiently alleged federal antitrust or constitutional claims or whether plaintiff should proceed in state court under the state antitrust act.

Sherman Act Claims
It is well established that the federal court has jurisdiction over Sherman Act claims only if the business or conduct concerned occurs "in commerce" or though wholly intra-state "substantially affects *812 commerce," McLain v. Real Estate Board of New Orleans, Inc., 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980). Though premature dismissal of a Sherman Act case for lack of subject matter jurisdiction is disfavored, see Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), plaintiff cannot presume that the activity has a sufficient interstate nexus, McLain, 100 S.Ct. at 509. Rather plaintiff must allege the critical interstate commerce relationship, id., and if those allegations are controverted the burden is on plaintiff to submit evidence to demonstrate that defendant's business is either in interstate commerce or if wholly local that it has a substantial effect on interstate commerce. Id.; Diversified Brokerage Services, Inc. v. Greater Des Moines Board of Realtors, 521 F.2d 1343 (8th Cir. 1975).[2] In making the jurisdictional determination, the court must construe the pleadings, as supplemented, most favorably to the non-moving party.[3]
The allegations construed most favorably toward plaintiff demonstrate only a remote nexus to interstate commerce. Plaintiff relies on the facts that the equipment used to haul the garbage and the ultimate source of the rubbish, before it was rubbish, originated in interstate commerce. Plaintiff also relies on the allegations of facts that some of plaintiff's or defendant's customers may have worked in Wisconsin, that St. Paul is only 20 miles from Wisconsin and lies on the Mississippi River, that some waste from Ramsey County and the metropolitan area was shipped to a landfill in Wisconsin, and that defendant might have sold recyclable material if it had chosen to do so. It is undisputed that neither plaintiff nor defendant picked up or deposited rubbish in another state, or that either party directly or indirectly shipped recyclable materials out of state as part of their rubbish business. The court discounts plaintiff's allegations that some of defendant's employees, on their own initiative, set aside some recyclable material ostensibly for resale. Plaintiff did not allege or submit any evidence indicating that such conduct was within the scope of their employment or otherwise condoned by defendant.
Plaintiff has cited no authority for the proposition that a court may consider defendant's geographic proximity either to a neighboring state or to an interstate river as a factor in determining the interstate nexus. Thus, the narrow issue here is whether the fact that the tools of defendant's trade, as opposed to its product or service, moves in interstate commerce is sufficient to meet the "in commerce" or "effecting commerce" jurisdictional prerequisite of the Sherman Act.

a) "in commerce"
The "in commerce" test can be met by showing either that defendant's business is actually in interstate commerce or that the business, though essentially local in nature, *813 is an "integral part of" and "essential and inseparable from" an interstate transaction. Goldfarb v. Virginia State Bar, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975). See McLain v. Real Estate Board of New Orleans, Inc., 444 U.S. at 238, 100 S.Ct. at 507 (1980). In this case there is no basis to conclude that defendant's business is in commerce in the ordinary meaning of that term. Defendant's business was the providing of a service, the collection of rubbish. None of its customers lived out of state and neither party hauled any refuse out of state. Nor is the collection of rubbish in this case an integral, essential and inseparable part of an interstate transaction. Unlike the real estate transactions involved in Goldfarb, the transaction here starts and ends with the pick-up and deposit of the rubbish.

b) "effecting commerce"
Under this second test plaintiff must demonstrate that defendant's business has a substantial effect on interstate commerce. McLain v. Real Estate Board of New Orleans, Inc., 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980); Hospital Building Co. v. Trustees of Rex Hospital, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). In making that determination the court must look to the activities of the parties rather than the industry as a whole.[4]See McLain, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 ("it would be sufficient ... to demonstrate a substantial effect ... generated by respondents' brokerage activity," id. at 509; jurisdiction is established where "respondents' activities" are shown "to have a not unsubstantial effect" id. at 509). (Emphasis added.)
The fact that the effect is indirect because the conduct producing it is not "purposely directed" toward or intended to affect interstate commerce is not determinative, Hospital Building Co. v. Trustees of Rex Hospital, 425 U.S. 738, 745, 96 S.Ct. 1848, 1852, 48 L.Ed.2d 338 (1976) nor is it necessary for the plaintiff to demonstrate an effect on interstate commerce caused by the alleged illegal conduct. McLain v. Real Estate Board of New Orleans, Inc., 444 U.S. 232, 241, 100 S.Ct. 502, 509, 62 L.Ed.2d 441 (1980). However, plaintiff must demonstrate that "as a matter of practical economics" defendants business had a substantial effect on interstate commerce. McLain, 100 S.Ct. at 511. Based on this record the court cannot find, as a matter of practical economics that either party's rubbish business had a substantial effect on interstate commerce. The closest and only reasonable nexus plaintiff can show is the fact that the equipment used to conduct their businesses was shipped in interstate commerce. However, neither party was in the business of buying and selling such equipment, rather the equipment was simply an incident of their trade, a one time or infrequent purchase. See, Marston v. Ann Arbor Property Managers (Management) Assn., 422 F.2d 836 (6th Cir.) cert. denied 399 U.S. 929, 90 S.Ct. 2244, 26 L.Ed.2d 796 *814 (1970) (per curiam) (alleged scheme to maintain high rents in Ann Arbor had a purely local effect even though buildings were obviously constructed of material shipped in interstate commerce); compare, Hospital Building Co. v. Trustees of Rex Hospital, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976) (local hospital's business had a substantial effect on interstate commerce where it served patients from out-state and 80% of medical supplies came from outstate; medical supplies constituted part of daily service rendered); Western Waste Service Systems v. Universal Waste Control, 616 F.2d 1094 (9th Cir. 1980) cert. denied ___ U.S. ___, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980) (hauling rubbish in Phoenix, Arizona substantially affected interstate commerce; the court focused on the facts that trucks were manufactured out of state, both companies distributed garbage compactors manufactured and shipped in interstate commerce and defendant sold recyclable material to brokers for shipment out of state. Defendant was also a foreign corporation); Chatham Condominium Associations v. Century Village, Inc., 597 F.2d 1002 (5th Cir. 1979) (alleged unlawful tying arrangement by West Palm Beach condominium developer was subject to federal court's jurisdiction, where $675,000 of lease payments under alleged unlawful tying agreement were paid by out of state residents); J. P. Mascaro & Sons, Inc. v. William J. O'Hara, Inc., 565 F.2d 264 (3d Cir. 1977) (garbage hauling business in four county area surrounding Philadelphia subject to federal court jurisdiction. Though court framed issue as, whether purchase of equipment from outstate was sufficient, facts demonstrated considerably more contacts. Plaintiff serviced 24 corporate businesses with offices out of state, one defendant serviced a New Jersey customer and another received payments from federal government for servicing military installation); Tiger Trash v. Browning-Ferris Industries, Inc., 560 F.2d 818 (7th Cir. 1977) cert. denied 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978) (rubbish business in Evansville, Indiana subject to federal court's jurisdiction where defendant used 10% of its equipment servicing 20 customers, 5% of its accounts, in Henderson, Kentucky); and Doctors, Inc. v. Blue Cross of Greater Philadelphia, 490 F.2d 48 (3d Cir. 1973) (alleged illegal boycott to limit competition in greater Philadelphia area fell within federal court's jurisdiction where the area serviced and affected by defendant's unlawful scheme included five counties in Pennsylvania and three counties in New Jersey). Nor is this a case where, as in McLain, the sale of defendant's product or service has a direct effect on a significant attendant product or service. The sale of the rubbish collection service here does not have an effect on some other "appreciable activity demonstrably in interstate commerce." McLain v. Real Estate Board of New Orleans, Inc., 444 U.S. 232, 242, 100 S.Ct. 502, 509, 62 L.Ed.2d 441 (1980). Plaintiff might argue that the recycling industry is an appreciable activity demonstrably in interstate commerce which is affected by the defendant's rubbish business. However, neither plaintiff nor defendant sold to such businesses. Plaintiff alleges only that it might have done so if it had chosen to do so.
Notwithstanding the broad language used in each of the above cases the courts there found that a product or service was sold to or purchased from out of state persons in the ordinary course of plaintiff's or defendant's business. None of those cases nor any which have been cited to the court have found a sufficient interstate nexus based solely upon the fact that a piece of equipment or some tool necessary for the production or sale of the product or service originated in interstate commerce. The court does not thereby purport some talismanic test for making the interstate commerce determination, for the issue requires a practical case-by-case economic judgment. Doctors Inc. v. Blue Cross of Greater Philadelphia, 490 F.2d 48, 51 (3d Cir. 1973). Significant here are the facts that no service nor product of the parties was purchased or sold in interstate commerce, the businesses were relatively small and that the day to day operation of neither business directly affected an appreciable activity demonstrably in interstate commerce.

*815 § 1983 Claims

Plaintiff alleges a section 1983 claim based upon an alleged denial of equal protection, and taking of his property without due process.
Though it is true that governmental action based upon equal protection violations may be actionable under § 1983, see e. g., LeClair v. Saunders, 627 F.2d 606 (2d Cir. 1980) plaintiff must allege some impermissible discrimination. Flores v. Pierce, 617 F.2d 1386 (9th Cir. 1980) cert. denied ___ U.S. ___, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980) (denial of liquor license because of race). Plaintiff has not alleged such discriminatory intent.
Plaintiff's § 1983 claim based upon a denial of a property right is equally without merit. Whether a property right exists must be determined by reference to state law. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).
Plaintiff argues that the fact that he was in business for 15 years gives him a reasonable expectation of continued engagement in his profession. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1970). However, the city's action here did not prohibit plaintiff's business. Rather the city simply competed with plaintiff by entering the business of rubbish collection. Plaintiff cites no case, nor has the court found any, which states that a person has a property right in being free of competition in his business. Moreover, the alleged adverse impact on plaintiff's business is only an indirect effect of the governmental action. Such indirect action is not actionable under the Constitution. O'Bannon v. Town Court Nursing Center, 447 U.S. 773, 100 S.Ct. 2467, 2476-77, 65 L.Ed.2d 506 (1980).
Plaintiff's Sherman Act claim is dismissed for lack of subject matter jurisdiction, the remaining claims are dismissed for failure to state a claim upon which relief can be granted.
NOTES
[1] The in commerce or affecting commerce tests are jurisdictional requirements, thus defendant's motion should properly be, and this court treats it as, a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), Fed.R.Civ.P. See e. g., McLain v. Real Estate Board, Inc., 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980). For an incisive criticism of that approach see, Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd., 494 F.Supp. 1161, 1171-72 n. 21 (E.D.Pa.1980).
[2] But see Tiger Trash v. Browning Ferris Industries, Inc., 560 F.2d 818, 826 (7th Cir. 1977) cert. denied, 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978) (appearing to shift at least the burden of persuasion noting that plaintiff has adequately charged and defendants have not persuaded as (sic) that a significant or appreciable segment of interstate commerce was not involved ....")
[3] The standard to be applied in making the jurisdictional determination is unclear. The McLain court held that based upon the record before it, there was a sufficient basis for satisfying the jurisdictional requirements "so as to entitle the petitioners to go forward." 444 U.S. at 246, 100 S.Ct. at 511. Presumably that test introduces a two stage jurisdictional determination. The first at the pretrial stage and the second at the trial stage. See, Zenith Radio Corp. v. Matsushita Electric Industries Co., 494 F.Supp. 1161, 1174 (E.D.Pa.1980), the standard at each stage must then be different as a two stage test would otherwise be superfluous. The standard at the pretrial stage must necessarily be a lesser one.

The Ninth Circuit has construed McLain to preclude any inquiry into and determination of the jurisdictional facts. Western Waste Service Systems v. Universal Waste Control, 616 F.2d 1094, 1095 n. 1 (9th Cir. 1980), cert. denied ___ U.S. ___, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980). However, to the extent that McLain requires plaintiff to "demonstrate" the interstate nexus "if [those] allegations are controverted," that decision presupposes some inquiry into and determination of the jurisdictional facts.
[4] It is often said, and this court does not question, the principle that the scope of the Sherman Act is coterminous with Congress' power to regulate interstate commerce. Hospital Building Co. v. Trustees of Rex Hospital, 425 U.S. 738, 743, 96 S.Ct. 1848, 1851, 48 L.Ed.2d 338 (1976); Chatham Condominium Associations v. Century Village, Inc., 597 F.2d 1002, 1008 (5th Cir. 1979). The furthest reach of the commerce clause is reflected in the trilogy of cases. Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971) (local loan sharking subject to federal law); Katzenbach v. McClung, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964) (local restaurant subject to federal law because it purchased meat from a local supplier who in turn purchased it from outside the state); and Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942) (farmer growing 23 acres of wheat for local consumption is subject to federal acreage allotment laws). This court declines, however, to apply the analysis of those cases to the Sherman Act. In Perez and Wickard, the court looked at the entire industry to which one of the parties belonged; In Katzenbach the court permitted the tracing of an article up the chain of distribution until its source was out of state. Either analysis applied in Sherman Act cases would read the interstate commerce requirement out of the Sherman Act. That has not been done. See, J. P. Mascaro & Sons, Inc. v. William J. O'Hara, Inc., 565 F.2d 264, 268 (3d Cir. 1977) and this court will await a more express statement from a higher court before doing so.