**DUNLOP TIRE AND RUBBER CORP., Plaintiff,**

v.

**PEPSICO, INC., Defendant.**

No. 81 C 7079.

United States District Court, N.D. Illinois, E.D.

April 11, 1984.

Kenneth S. Marks, Gary V. McGowan, Randall W. Wilson, Susman & McGowan, Mark L.D. Wawro, Houston, Tex., Lowell E. Sachnoff, Jack L. Block, Melaine Gray, Charles Ryan, Jr., Sachnoff, Weaver & Rubenstein, Ltd., Chicago, Ill., David Stahl, Joanne Bloom, Isham, Lincoln & Beale, Chicago, Ill., for plaintiff and counter defendants.

Arthur S. Friedman, Dorit S. Heimer, Friedman & Gass, P.C., Peter Wang, New York City, Peter V. Baugher, Roger Pascal, Diana C. White, Schiff, Hardin & Waite, Chicago, Ill., Marguerite S. Stephens, Howrey & Simon, Washington, D.C., for defendant and counter plaintiff.

## DECISION

McMILLEN, District Judge.

Defendant has filed an amended counterclaim against the plaintiff and has joined

five of its related corporations. Four of the new counterdefendants have filed a motion to dismiss for lack of personal jurisdiction which the counterplaintiff resists on the theory that one parent controls all of the so-called foreign corporations and that they are transacting business in this district within the meaning of § 12 of the Clayton Act, 15 U.S.C. § 22. Those counterdefendants who have moved to dismiss the counterclaim against them for lack of jurisdiction are Dunlop Holdings, P.L.C., International Sports Company, Ltd., Slazengers, Ltd., and Sportlines International, Ltd. Slazengers, Inc. and the plaintiff have filed answers to the counterclaim.

Counterdefendant Dunlop Holdings P.L.C. owns the plaintiff-counterdefendant Dunlop Tire and Rubber Corp., an American company, and also owns Dunlop, Ltd., a British company. Dunlop, Ltd., which is not joined, owns International Sports Company, Ltd. which owns Slazengers, Ltd (also a non-party) which itself owns Slazengers, Inc., an American company. Sportlines International, Ltd. is a Canadian corporation owned by Dunlop, Ltd. Thus all of the foreign counterdefendants are related by 100% stock ownership to the plaintiff-counterdefendant through the British parent corporation, Dunlop Holdings, P.L.C.

Opposition to dismissing the moving counterdefendants is primarily furnished by a 31-page affidavit of defendant's attorney Arthur Friedman which summarizes and incorporates many of the facts contained in the record. The issue is one of control through directors and officers, together with financial connections and policies of the multiple counterdefendants, and is governed primarily by the general principles of the Supreme Court decision in *United States v. Scophony Corp. of America*, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948). This does not require that jurisdiction be established in antitrust cases by showing subsidiaries to be complete shams. The counterplaintiff can prevail in the case at bar by presenting *prima facie* evidence that the parent is transacting business by controlling the acts and policies of other corporations.

■ It is pertinent to observe that the complaint in this case was filed by the wholly-owned American subsidary of Dunlop Holdings, P.L.C., alleging that the defendant-counterplaintiff has violated § 2 of the Sherman Antitrust Act by selling tennis balls below cost and at discriminatory prices with the intention of excluding plaintiff from the market. Counterplaintiff now alleges that the plaintiff is engaged in a conspiracy with certain other members of the Dunlop corporate family, the named counterdefendants. Thus public policy of the United States favors bringing into this case any parties who might be engaged in concerted action with the plaintiff if they themselves are or have been engaged in similar antitrust practices in this District. In short, the Sherman Antitrust Act militates in favor of disposing of the claims and counterclaims in one action, so long as we have jurisdiction. Section 12 of the Clayton Act, 15 U.S.C. § 22, provides in pertinent part that "any suit ... under the antitrust laws against a corporation may be brought not only in the judicial district where it is an inhabitant, but also in any district wherein it may be found or transacts business...."

As was said by the Seventh Circuit Court of Appeals in *Tiger Trash v. Browning-Ferris Industries, Inc.*, 560 F.2d 818 (1977), at p. 823:

> Once a sufficient level of control is established, the fact that a subsidiary is not controlled to an ultimate degree is irrelevant to a decision to pierce the corporate veil for venue purposes.

See also *Processed Plastic Co. v. Warner Communications, Inc.*, 81 C 3028 (N.D.Ill. Apr. 20, 1982). Nor is our decision found on one side or the other of a clearly drawn line but rather by weighing the pertinent facts and reasonable inferences.

■ The affidavit of defendant's attorney Arthur Friedman lacks facts which would indicate that Sportlines International, Ltd., the Canadian subsidiary of Dunlop, Ltd., is committing any antitrust acts or violations in this jurisdiction. Its activities

are engaged in elsewhere, and counterplaintiff does not contend that it has any office or other contacts with this jurisdiction. Therefore, the counterclaim against that corporation should be dismissed, allowing it to continue its operations in the tennis ball industry outside of this judicial district.

■ Aside from the Canadian corporation, however, the counterplaintiff has marshalled numerous facts and circumstances which lead to the conclusion that Dunlop Holdings, P.L.C. is responsible for the policies and activities not only of the plaintiff but also of Dunlop, Ltd. which in turn controls the activities of the other movants, International Sports Company, Ltd., and Slazengers, Ltd. The undisputed evidence is that Dunlop Holdings, P.L.C., has established a plenary "personnel committee" headed by Alan Lord, managing director of the parent, and that his designee, Findlay Picken, managing director of International Sports Company, Ltd., is not only on the board of that corporation but also on the board of its subsidiaries Slazengers, Ltd. and Slazengers, Inc. Both men have testified that the personnel committee regularly places persons in various high positions with the subsidiaries in order to give them varied experiences and that they in turn have regular communications with the policies of the parent Dunlop Holdings, P.L.C.

■ Perhaps the most significant relationship is the admitted financing of the various subsidiaries, Dunlop Holdings exercising control over capital expenditures and financial operations generally not only of the plaintiff Dunlop Tire and Rubber Company but also of its British counterpart, Dunlop, Ltd. and its offspring. The details of the control emanating from Dunlop Holdings, P.L.C., are too voluminous to summarize in detail, but it would be naive to conclude that control of the purse strings is unrelated to control of pricing. As the Supreme Court observed in *Scophony Corp., supra,* the words "transacts business" in § 12 of the Clayton Act should be given a practical non-technical application, broader than the concept of "carrying on business" under § 7 of the Sherman Act (333 U.S. 804–807, 68 S.Ct. 860–861).

Although Alan Lord, managing director of Dunlop Holdings, P.L.C., seems to be the overall manager of the family's policy, the individual who apparently transmitted the policy to the various subsidiaries and was instrumental in seeing that they were carried out is Findlay Picken. It was through him that the pricing policy of Dunlop Holdings and of Dunlop, Ltd. was effectuated, not only through the day-to-day communications between the members of the personnel committee but also through the financing available from the parent Dunlop Holdings, P.L.C. He testified that he coordinates suppliers, promotion and product development of the world-wide sports operation (Picken Deposition, p. 8), and that he represents Dunlop Holdings in a very practical way throughout its business activities. The pricing policy of the latter, which is the kingpin of the entire hierarchy, is stated in Exhibit VV, *inter alia,* as follows:

It is generally established that, other than for tennis balls which we are required to sell at cost, selling prices of all products for shipment to affiliate companies should be calculated to achieve at least a 10% gross margin.

We need not find that the plaintiff corporation is controlled by any of the counterdefendants other than Dunlop Holdings, P.L.C. On the other hand, since plaintiff is alleged to be involved in various antitrust activities in this district, it is our opinion that jurisdiction should be exercised over Dunlop Holdings, P.L.C. and over the corporations whose policies and finances it controls because in effect they are also transacting business activities in this district. If the allegations of a "conspiracy" between counterdefendants are taken as true, as they are on this motion, then a judgment in favor of the counterplaintiff against only the plaintiff-counterdefendant Dunlop Tire and Rubber Corporation would merely excise one limb of the tree without fully enforcing the antitrust policy which has been established by Congress as a basic principle governing business activities in the United States. In short, now that the relationship between the plaintiff and certain other family members controlled by

Dunlop Holdings, P.L.C. has been made a matter of record in this case, it is our opinion that all counterdefendants except Sportlines International, Ltd. should be parties, since counterdefendant has shown *prima facie* that they are transacting business or controlling the transaction of business in this jurisdiction. This conclusion, of course, applies only insofar as exercising our jurisdiction over the foreign corporations. Their liability, if any, remains unproven.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the motions of the counterdefendants Dunlop Holdings, P.L.C., International Sports Company, Ltd., and Slazengers, Ltd. to dismiss for lack of personal jurisdiction is denied and they are ordered to file an answer to the counterclaim within two weeks (14 days) hereof. The motion of the counterdefendant Sportlines International, Ltd., a Canadian corporation, to dismiss the counterclaim is granted.