**CHAMBERS DEVELOPMENT COMPANY, INC., Plaintiff,**

v.

**BROWNING–FERRIS INDUSTRIES, Browning-Ferris Industries of Pennsylvania, Inc., John Drury, William Curtis, Clifford Bright, Edward Benko, William Pittman, Louis Mazzaro, David Humphreys, Anthony Phillips, Jr., Defendants.**

**Civ. A. No. 83–2384.**

United States District Court, W.D. Pennsylvania.

July 6, 1984.

Jamie L. Whitten, Lipsen, Hamberger, Whitten & Hamberger, Washington, D.C., Ralph F. Scalera, Carl L. LoPresti, Michael R. Bucci, Jr., Pittsburgh, Pa., for plaintiff.

Robert J. Cindrich, Mansmann, Cindrich & Huber, Pittsburgh, Pa., for defendant David Humphreys.

P. Christian Hague, David A. Luptak, Meyer, Unkovic & Scott, Pittsburgh, Pa., for defendant Browning Ferris Industries of Pa.

J. Gary Kosinski, William B. Mallin, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for defendant Browning Ferris Industries, Inc.

H. Yale Gutnick, E.J. Strassburger, Strassburger, McKenna, Messer, Shilobod & Gutnick, Pittsburgh, Pa., for defendants Bright, Benko, Pittman, Mazzaro and Phillips.

## OPINION

COHILL, District Judge.

### I. *Introduction*

Plaintiff, Chambers Development Company, Inc. ("Chambers"), a company engaged in the trash and waste disposal business in Southwestern Pennsylvania, filed this action against the defendants alleging violations of the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. § 1961, *et seq.* ("RICO"), the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq.*, and Pennsylvania common law. All of the defendants have submitted Motions to Dismiss pursuant to Fed.R.Civ.P. 12(b).

It is these motions which we now consider.

### II. *Facts*

Defendant, Browning-Ferris Industries, Inc. ("BFI") is a Texas corporation which, like the plaintiff, is engaged in the business of trash hauling and waste removal. BFI has several subsidiaries throughout the country, one being Browning-Ferris Industries of Pennsylvania, Inc. ("BFI of Pa."), another defendant in this case.

The plaintiff, Chambers, contends that in or about 1978, BFI and BFI of Pa. began an active campaign to gain control of the refuse and waste collection business in Western Pennsylvania. To accomplish this goal, BFI and BFI of Pa. attempted to eliminate their principal competition, including Chambers, through various means such as offering plaintiff's customers lower prices, rebates and free services, establishing "surrogate" refuse collection companies which would take over smaller companies, and bribing various officials in the Pennsylvania Department of Environmental Resources ("DER") and Allegheny County. *See* Plaintiff's Complaint ¶ 22. Several companies were allegedly established, and several individuals were employed to aid in the effectuation of the takeover scheme.

One company allegedly formed to assist in the destruction of competition was Mazzaro, Inc., a small landfill company in Allegheny County, Pennsylvania. "Landfill" is the disposal of trash and garbage by burying it under layers of earth in low ground. The plaintiff alleges that in 1977, BFI and BFI of Pa. contacted Carol Mazzaro, the owner of a landfill area adjacent to one of the landfill areas owned by BFI of Pa., and offered to purchase her landfill area. However, the defendants wanted Ms. Mazzaro to continue to operate the landfill area in her name so that the true owner would not be revealed. She refused.

To coerce Ms. Mazzaro into cooperation, BFI of Pa., through its vice president and general manager, William Curtis, allegedly paid bribes to the DER and Allegheny County so that these agencies would economically harass Ms. Mazzaro and threaten

to shut her landfill area if she did not make changes.

By 1980, Ms. Mazzaro realized that she would not be able to continue the landfill as she did not have the money to make the ordered improvements. She therefore agreed with defendants, Curtis, Clifford Bright (BFI of Pa.'s controller), Edward Benko (BFI of Pa.'s sales manager), William Pittman (BFI of Pa.'s operations manager), and Louis Mazzaro (an employee of BFI of Pa. and Ms. Mazzaro's cousin) to set up a surrogate refuse company, named Mazzaro, Inc., which would serve as a front and allow BFI and BFI of Pa. to acquire small refuse collection companies which in turn would bid against Chambers.

Horse Trucking, Inc., the second company allegedly used by the defendants to effectuate their scheme, was supposedly created by BFI through Messrs. Curtis and Mazzaro for "the sole purpose of infusing money into Mazzaro, Inc." Plaintiff's Complaint ¶ 35. BFI purportedly gave Horse Trucking a contract to haul trash, and the money paid to Horse Trucking by BFI was then diverted into Mazzaro, Inc.

The relationship between the two companies and their relevance to the case at bar can be summarized as follows:

> Mazzaro, Inc. and Horse Trucking were operated by BFI through the Defendants Curtis, Bright, Benko, Pittman and Louis Mazzaro for seventeen months beginning on or about May, 1980. During this time, Mazzaro, Inc. and its acquired subsidiaries, all subsidized by BFI, took contracts away from Chambers and kept other prospective customers from contracting with Chambers by offering lower prices than Chambers because of the secret subsidy.

Plaintiff's Complaint ¶ 37.

At the same time that Mazzaro, Inc. and Horse Trucking were being used to prevent competition, BFI and BFI of Pa. were purportedly using Defendant, Anthony Phillips, Jr. and his affiliated refuse collection companies "as surrogates against Chambers". Plaintiff's Complaint ¶ 41. BFI of Pa. allegedly gave Phillips a contract which was awarded to it by the City of Pittsburgh, thus, making Phillips its surrogate. Part of the plan was that Phillips would submit phony invoices to the city for trash pickups that were never made, and "[t]his illegal money was [then] shared by Phillips, the defendant Curtis and the City Supervisor who would forward the phony invoices for payment by the City." Plaintiff's Complaint ¶ 42. Curtis would use this money to fund Mazzaro, Inc. and for bribes to government officials. *Id.* at ¶ 43.

In addition to these specific schemes involving Mazzaro, Inc., Horse Trucking, Inc., and Defendant Phillips, the plaintiff contends that BFI and BFI of Pa. generally used surrogate companies and paid bribes to officials of the DER and Allegheny County to rig bids and prevent Chambers from receiving any trash-hauling contracts.

### III. *The Complaint*

#### A. *Count I—RICO*

In Count I of its complaint, Chambers seeks treble damages from the defendants for alleged RICO violations, more specifically, violations of the four subsections of RICO, 18 U.S.C. § 1962(a)–(d).

18 U.S.C. § 1962(a)–(d) provides in pertinent part,

§ 1962. Prohibited activities

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or

the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

### B. *Count II—Sherman Act*

Count II alleges that the defendants' conduct constituted "a combination and conspiracy in restraint of trade" in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and "a monopolization, an attempt to monopolize, and a combination and conspiracy to monopolize trade and commerce" in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. Plaintiff's Complaint, ¶¶ 62, 63. Chambers contends that because of these violations, the plaintiff lost contracts and suffered damage to its business reputation. *Id.* at ¶ 64.

### C. *Counts III and IV—Pennsylvania State Claims*

Counts III and IV of the complaint are claims under state law which apply only to BFI and BFI of Pa.

In Count III, the plaintiff alleges that BFI and BFI of Pa. intentionally interfered with plaintiff's business relationships by encouraging plaintiff's customers to leave the plaintiff and contract with BFI. The means allegedly used to harm the plaintiff's business relationships include, *inter alia,* slanderous statements about the plaintiff, the withholding of funds due the plaintiff, and the violation of contracts between the plaintiff and BFI. Plaintiff's Complaint, ¶ 66. As a result of these actions, "the plaintiff was denied the benefit of certain contracts with third parties," and "has been forced to incur substantial indebtedness and suffer financial harm." *Id.* at ¶¶ 67 and 69.

In Count IV, the plaintiff alleges that BFI and BFI of Pa. breached a contract between the parties. By agreement, BFI of Pa. brought its waste pickups to the plaintiff's landfill area, and the plaintiff accepted the refuse material. BFI of Pa. purportedly failed to pay Chambers the amounts due and owing for the right to deposit the waste material in the plaintiff's landfill area, in breach of the alleged contract.

### IV. *Discussion*

■ For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the nonmoving party and the allegations and all reasonable inferences are accepted as true. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969); *Hochman v. Board of Education of Newark,* 534 F.2d 1094 (3d Cir.1976); *Butz v. Hertz Corporation,* 554 F.Supp. 1178 (W.D.Pa. 1983). A complaint should not be dismissed unless it appears to a certainty that a plaintiff could not prove a set of facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). With these general principles in mind, we will consider the specific claims in Chambers' complaint.

### A. *The RICO Claims*

Several arguments have been made by the defendants as to why the plaintiff's RICO claims must be dismissed. Most of these arguments relate generally to the plaintiff's complaint and have been raised in some form by all of the defendants. We will address these general claims first and then consider the specific arguments raised by individual defendants.

### 1. *General Arguments*

In numerous briefs totalling hundreds of pages and during 1½ hours of oral arguments, each defendant, in some manner, attacked the sufficiency of the plaintiff's RICO claims. Specifically, the defendants argue that the plaintiff has failed to state a

claim upon which relief can be granted since it has failed to allege facts which support the necessary elements of a RICO charge. To simplify this discussion, as there were myriad arguments regarding this claim, we will merely state the general elements of a RICO violation which have been attacked by the defendants and then analyze the plaintiff's complaint to see if each element has been sufficiently alleged.

■ In *all* RICO claims, the plaintiff must first allege the existence of an "enterprise." *Eaby v. Richmond,* 561 F.Supp. 131 (E.D.Pa.1983). *See also United States v. Kopituk,* 690 F.2d 1289 (11th Cir.1982), *cert. denied* — U.S. ——, 103 S.Ct. 2089, 77 L.Ed.2d 300 (1983).

■ Section 1961(4) of Title 18 defines an "enterprise" as including

> any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

As evidenced by this statutory definition, RICO encompasses two types of enterprises: legal entities and "associations in fact." *United States v. Turkette,* 452 U.S. 576, 581–582, 101 S.Ct. 2524, 2527–2528, 69 L.Ed.2d 246 (1981). "The first encompasses organizations such as corporations and partnerships …" *Id.* at 581, 101 S.Ct. at 2527, and courts have uniformly held that such activities are appropriately alleged as RICO enterprises. *See Bennett v. Berg,* 685 F.2d 1053 (8th Cir.), *cert. denied sub nom. Prudential Insurance Co. v. Bennett,* — U.S. ——, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). Though not as easy to establish, mere associations of a group of individuals also qualify as "enterprises." *See e.g. United States v. Aleman,* 609 F.2d 298 (7th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *United States v. Elliott,* 571 F.2d 880, 884 (5th Cir.) *rehearing denied* 575 F.2d 300 (5th Cir.1977), *cert. denied* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978).

■ In paragraphs 15, 16, 17 and 18 of the plaintiff's complaint, the plaintiff names four enterprises; BFI (which the plaintiff defines as BFI and BFI of Pa., *See* Plaintiff's Complaint, ¶ 5), Mazzaro, Inc.,

Horse Trucking, Inc. and a group of individuals comprised of Messrs. Curtis, Bright, Benko, Pittman, Mazzaro and Humphreys.

As legal corporate entities, BFI, Mazzaro, Inc. and Horse Trucking, Inc. clearly fall within the first category of an "enterprise" as defined by section 1961(4).

The individual defendants are "a group of individuals associated in fact although not a legal entity," 18 U.S.C. § 1961(4), and therefore, also comprise an enterprise.

As such, we find that the plaintiff's complaint sufficiently alleges the first element of any RICO claim, i.e. an "enterprise."

■ The second element required to establish any violation of 18 U.S.C. § 1962(a)–(d) is that the enterprise must affect interstate commerce. *Eaby, supra.* The statute requires that the activity of the *enterprise,* not each predicate act of racketeering, must have some affect on interstate commerce. *United States v. Nerone,* 563 F.2d 836, 852–854 (7th Cir.1977), *cert. denied* 435 U.S. 951, 98 S.Ct. 1577, 55 L.Ed.2d 801 (1978). A "nexus of the enterprise to interstate or foreign commerce, albeit minimal" must be shown. *United States v. Rone,* 598 F.2d 564, 573 (9th Cir.1979), *cert. denied* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980), and cases cited therein.

■ In applying these legal precepts to the case at bar, we find that the plaintiff has sufficiently alleged that each enterprise has affected interstate commerce.

In paragraph 15 of the complaint, the plaintiff alleges that BFI affects interstate commerce because it purchases and finances heavy equipment that has moved in interstate commerce, and it participates nationwide in the refuse collection business which results in the interstate movement of equipment, funds and personnel.

Mazzaro, Inc. and Horse Trucking, Inc. affect interstate commerce because they allegedly purchase and finance heavy equipment that has moved in interstate commerce. Plaintiff's Complaint, ¶¶ 16, 17.

As previously noted, the plaintiff in a RICO case must show a connection between the enterprise and interstate commerce, however, this nexus may be minimal and still be sufficient. *Rone, supra.* Courts have been liberal in their decisions as to what constitutes an affect on interstate commerce in RICO cases. *See Long, Treble Damages for Violations of the Federal Securities Laws: A Suggested Analysis and Application of the RICO Civil Cause of Action,* 85 Dick.L.R. 201, 240 (1981).

In *United States v. Joseph,* 526 F.Supp. 504 (E.D.Pa.1981), the court held that requisitions for supplies subsequently purchased in interstate commerce is sufficient to meet the jurisdictional test of RICO.

In *United States v. Allen,* 656 F.2d 964 (4th Cir.1981), supplies used in a bookmaking operation which came from out-of-state were found to be an adequate nexus.

Interstate telephone calls and the purchase of supplies from another state provided a sufficient basis for invoking RICO's jurisdiction in *United States v. Altomare,* 625 F.2d 5 (4th Cir.1980).

In following the precedent set by these cases, we find that the allegations that BFI, Mazzaro, Inc. and Horse Trucking, Inc. purchased and financed heavy equipment from out-of-state establish a sufficient connection between these enterprises and interstate commerce.

As for the fourth enterprise consisting of the group of individual defendants, the connection between the activities of the enterprise and interstate commerce is not as obvious as that involving the corporate enterprises, but the nexus alleged is sufficient to meet the jurisdictional requirements of RICO.

■ In paragraph 18 of the plaintiff's complaint, Chambers states that the activities of the enterprise made up of the group of individuals "affect interstate commerce." Such conclusory language has been held to be sufficient in alleging RICO jurisdiction. *United States v. Ostrer,* 481 F.Supp. 407 (S.D.N.Y.1979). Thus, this paragraph alone could be a basis for finding a nexus between the enterprise and interstate commerce. However, other statements in the complaint support a finding of sufficient jurisdictional allegations.

The enterprise consisting of the group of individuals was allegedly established for the purpose of carrying out the various schemes to take over Chambers' business. To effectuate this scheme, the individuals created and controlled Mazzaro, Inc. and Horse Trucking, Inc. Plaintiff's Complaint ¶¶ 25, 28, 31. As we previously held, Mazzaro, Inc. and Horse Trucking, Inc. (also named as enterprises) affect interstate commerce. Therefore, the activities of the group of individuals in controlling these companies would likewise affect interstate commerce. In addition, the plaintiff alleges that BFI (another enterprise), through the actions of the individuals, supplied money for down payments of trucks for Mazzaro, Inc., trucks which allegedly traveled in interstate commerce. Plaintiff's Complaint, ¶ 31. These facts, though admittedly skeletal, support a conclusion that the individuals' activities in controlling these surrogate companies which affect interstate commerce sufficiently establish a minimal connection between the fourth enterprise and interstate commerce. *See e.g., United States v. Vignola,* 464 F.Supp. 1091 (E.D.Pa.1979), *aff'd* 605 F.2d 1199 (3d Cir. 1979); *United States v. Fineman,* 434 F.Supp. 189 (E.D.Pa.1977); *United States v. Frumento,* 426 F.Supp. 797 (E.D.Pa. 1976), *aff'd* 552 F.2d 534 (3d Cir.1977), *cert. denied* 434 U.S. 1072, 98 S.Ct. 1256, 55 L.Ed.2d 775 (1978).

■ The third requirement in all RICO cases is that the plaintiff must allege, and subsequently prove, that the person who participated, either directly or indirectly, in the conduct of the enterprises' affairs did so through a "pattern of racketeering." Section 1961(5) of Title 18 defines "pattern of racketeering" as "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). "Racketeering activity" is de-

fined by the statute to include specified federal and state offenses. 18 U.S.C. § 1961(1).

 In the case at bar, the plaintiff first alleges as a pattern of racketeering activity that all of the defendants used "the mails for purposes of effectuating the aforesaid scheme to defraud and destroy the plaintiff, which occurred regularly and at numerous times in each of the last four years," thus, constituting a violation of 18 U.S.C. § 1341 (mail fraud). Plaintiff's Complaint, ¶ 53. The use of the mails included the mailing of checks and documents to various individuals and entities. Plaintiff's Complaint, ¶ 51.

The plaintiff also alleges that all of the defendants used wire communications within the last four years to effectuate their scheme to defraud, in violation of 18 U.S.C. § 1343 (wire fraud). Plaintiff's Complaint, ¶ 54.

As to the claims of mail and wire fraud, the defendants argue that the allegations in the complaint do not meet the specificity requirements of Fed.R.Civ.P. 9(b). We agree.

Rule 9(b) provides, "[i]n all averments of fraud ..., the circumstances constituting fraud shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." RICO claims, especially those involving mail or wire fraud as the predicate acts, *must* be pleaded with particularity. J. Fricano, *Civil RICO—An Antitrust Plaintiff's Considerations,* in Current Problems in Federal Practice, Vol. 1 (Prac.Law Inst.1983), p. 809. Courts have reasoned that Fed.R.Civ.P. 9(b) requires that fraud allegations be pleaded with specificity, therefore, fraudulent acts which are alleged predicate acts must also be claimed with specificity. *Bennett v. Berg,* 685 F.2d 1053, 1062–63 (8th Cir.1982), *cert. denied sub nom. Prudential Insurance Co. v. Bennett,* — U.S. ——, 104 S.Ct. 527, 78 L.Ed. 710 (1983); *Eaby v. Richmond,* 561 F.Supp. 131, 136–37 (E.D.Pa.1983); *Mauriber v. Shearson/American Express, Inc.,* 546 F.Supp. 391 (S.D.N.Y.1982); *Van Schaick v. Church of Scientology of Cali-*

*fornia, Inc.,* 535 F.Supp. 1125, 1138 (D.Mass.1982); *Hellenic Lines, Ltd. v. O'Hearn,* 523 F.Supp. 244 (S.D.N.Y.1981).

The requirement of particularity has not been met in this case. The plaintiff's complaint merely states conclusory statements that each of the defendants used the mails and wire communications to "effectuat[e] the ... scheme to defraud and destroy the plaintiff." Plaintiff's Complaint, ¶¶ 53, 54. Nowhere in the complaint are there allegations which state who sent the checks or documents through the mail, when such items were mailed, who made the wire communications, when the communications were made, or what the communications entailed. The plaintiff fails to specify which defendant performed which act, and which act affected which enterprise. Thus, the defendants are placed in the precarious position of having to defend against a number of vaguely alleged RICO violations.

In *Eaby v. Richmond, supra,* the court was faced with a situation similar to that before us. In that case, the only indication in the complaint that the defendants committed two predicate acts was the conclusory statement that "all the defendants defrauded the plaintiffs through the sale of securities 'by using the United States mails' in violation of the mail fraud statute." *Id.* at 136. In considering this statement, the court held,

> [t]his bare allegation is insufficient, against the backdrop of equally inadequate factual allegations, to state a RICO claim. Fed.R.Civ.P. 9(b) requires that allegations of fraud be stated with 'particularity'. This rule applies to allegations of mail fraud as predicate RICO civil offenses and generally requires assertions of 'time, place and contents of false representations ... [and] the identity of the person making the misrepresentation and what was obtained or given up thereby.' *Bennett v. Berg,* 685 F.2d at 1062.

*Id. See also Segal v. Gordon,* 467 F.2d 602 (2d Cir.1972); *Kimmel v. Peterson,* 565 F.Supp. 476 (E.D.Pa.1983), and cases cited therein. *Accord Denny v. Carey,* 72

F.R.D. 574 (E.D.Pa.1976); *Fox v. Prudential Resources Trust,* 382 F.Supp. 81 (E.D. Pa.1974).

The individual defendants in this case argue further that the plaintiff's claims, as they apply to them, must be dismissed because the allegations are based merely "upon information and belief." *See* Plaintiff's Complaint, ¶¶ 51, 42, 54, 55.

It is generally held that allegations pleaded "upon information and belief" do not satisfy the particularity requirements of Fed.R.Civ.P. 9(b). 2A *Moore's Federal Practice* ¶ 9.03 (2d ed. 1982). However, courts have relaxed this rule if the general allegations are accompanied by a statement of the facts upon which the claims are founded. *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Kimmel v. Peterson,* 565 F.Supp. 476, 482 (E.D.Pa.1983). "The rule may also be relaxed as to matters within the adverse party's knowledge, although some courts have required an accompanying statement of facts as well." *Kimmel, supra,* at 482.

As previously noted, we find no facts in the complaint which specify the activities of the individual defendants which give rise to RICO claims.

In keeping with this line of argument, the defendants also contend that the plaintiff's claim of conspiracy under 18 U.S.C. § 1962(d) must be dismissed for lack of specificity.

▮ In paragraph 59 of the complaint, Chambers alleges that "[a]ll the defendants have conspired to violate subsections (a), (b) and (c) of 18 U.S.C. § 1962, in violation of 18 U.S.C. § 1962(d)." This is not sufficient to support a RICO conspiracy claim as conclusory allegations of a conspiracy are inadequate to invoke our jurisdiction. *Eaby v. Richmond,* 561 F.Supp. at 137.

▮ In order to properly allege a conspiracy under section 1962(d), the plaintiff must assert that *each* defendant has

> by his words or actions ... objectively manifested an agreement to participate directly or indirectly, in the affairs of an enterprise through *the commission of two or more predicate crimes.*

*Id. citing United States v. Boffa,* 688 F.2d 919, 937 (3d Cir.1982), *quoting United States v. Elliott,* 571 F.2d 880, 903 (5th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978); (emphasis in original). Bare allegations of "conspiracy" like "fraud" will not lend credence to a civil RICO conspiracy claim.

When alleging a violation of section 1962(d)

> it is necessary to plead fraudulent conspiracy with enough specificity to inform the multiple defendants of the facts forming the basis of the conspiracy charge. *Such allegations must delineate among the defendants as to their participation or responsibilities* in making the statements [or performing the acts] which are the subject of the suit. Conspiracies described in sweeping or general terms cannot serve as the basis of a cause of action, and may be dismissed.

(Emphasis supplied.) *Van Schaick v. Church of Scientology of California, Inc.,* 535 F.Supp. 1125, 1141 (D.Mass.1982); (citations and quotations omitted). *See also Goldschmidt v. Patchett,* 686 F.2d 582 (7th Cir.1982); *Eaby, supra; Eisman v. Pan American World Airlines,* 336 F.Supp. 543 (E.D.Pa.1971).

In the case at bar, the conspiracy allegations in the complaint fall short of meeting these requirements. In fact, we did not see one factual allegation which would support the conclusory statement that *all* of the defendants objectively manifested an agreement to participate in the enterprises through predicate acts.

Since the language used by Chambers in its complaint concerning the mail and wire fraud allegations and the conspiracy claims are so general and sweeping, we have the power to dismiss the RICO charges which need these predicate acts as an element, and the claim which asserts a violation of section 1962(d). However, courts have recently taken the view that "the draconian result of dismissal" should not be automat-

ic in RICO cases, especially when the facts underlying the claims are within the defendants' control. *Eaby v. Richmond*, 561 F.Supp. at 137; *Kimmel v. Peterson*, 565 F.Supp. at 476.

■ In response to the defendants' arguments that the fraud and conspiracy claims lack specificity and that the "upon information and belief" allegations lack factual support, Chambers contends that the facts are within the exclusive control of the defendants, and, until these facts are uncovered through discovery, the allegations cannot be made more specific.

In *Eaby*, the plaintiffs raised the same argument and requested that a period of discovery be allowed, after which they would file an amended complaint which contained more specificity. The court accepted this argument and held,

> [b]ecause Fed.Civ.P. 9(b) 'must be harmonized' with Fed.R.Civ.P. 8; [citations omitted], we conclude that it would be error *at this stage* to grant the motions to dismiss for failure to plead with sufficient particularity. This conclusion finds support in the liberal federal policy which favors allowance of amendments, [citations omitted], and fosters the disposition of cases on the merits. [Citations omitted.]

*Id.* at 137; (emphasis in original).

We find this reasoning to be persuasive and therefore will not dismiss, at this time, the plaintiff's RICO claims which rely upon the mail or wire fraud claims as predicate acts, or the conspiracy claim. The defendants, however, may renew their motions to dismiss for failure to meet the specificity requirements, if necessary, after the plaintiff has had the opportunity to take discovery for sixty days and has thereafter filed an amended complaint which attempts to meet the requirements of Fed.R.Civ.P. 9(b) as to all claims.

■ Once a pattern of racketeering is established, the plaintiff must allege, and subsequently prove, that it was injured in some way by the actions of the defendants. Section 1964(c) of RICO permits a plaintiff to recover treble damages only if he is "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c).

What must be alleged in order to meet the requirements of 18 U.S.C. § 1964(c) has been a cause of controversy among courts, and, in fact, has resulted in a split in precedent in the Third Circuit district courts.

In *Erlbaum v. Erlbaum*, CCH Fed.Sec. L.Rep. p. 98, 772 (E.D.Pa.1982), the court held that in order to prove a RICO injury, the plaintiff must show "something more" than direct injury suffered from the predicate acts. *See also Landmark Savings & Loan v. Loeb Rhoades, Hornblower & Co.*, 527 F.Supp. 206 (E.D.Mich.1981). According to these cases, a "plaintiff must allege not only injury from the predicate offenses, but injury of the type the RICO statute was intended to prevent"; i.e. a "racketeering enterprise injury." *Harper v. New Japan Securities International, Inc.*, 545 F.Supp. 1002, 1007 (C.D.Cal.1982). *See also Waste Recovery Corp. v. Mahler*, 566 F.Supp. 1466 (S.D.N.Y.1983); *Van Schaick v. Church of Scientology of California, Inc.*, 535 F.Supp. 1125 (D.Mass.1982). "Racketeering enterprise injury" is defined as a "civil RICO defendant's ability to harm the plaintiff [which] is enhanced by the infusion of money from a pattern of racketeering activity into the enterprise." *Landmark Savings, supra*, at 209.

In *Kimmel v. Peterson*, 565 F.Supp. 476 (E.D.Pa.1983), the court rejected the concept of "racketeering enterprise injury" and held that a plaintiff may state a RICO claim even if he only suffers injury from the predicate acts. *See also Eisenberg v. Gagnon*, 564 F.Supp. 1347, 1352 (E.D.Pa. 1983); *Yancoski v. E.F. Hutton & Company*, 581 F.Supp. 88 (E.D.Pa.1981).

■ We are aware of the split in authority among the district courts within this Circuit and the fact that the Third Circuit Court of Appeals has not yet addressed this issue. We, however, did confront this issue in a recent case in which we held that "the concept of 'enterprise injury' ..., is an artificial barrier, created by the courts, and not warranted by the language, purpose, or history of the [RICO] statute."

*Joseph v. Algemene Bank Nederland, N.V.,* 592 F.Supp. 141, 147 (W.D.Pa. March 29, 1984). We, therefore, adopted Judge Giles reasoning in *Kimmel, supra,* and held that a RICO plaintiff need not allege a "RICO injury." *Joseph, supra,* at 147. Similarly, we will continue to follow the holding in *Kimmel* and will apply it to the case at hand.

In paragraph 60 of its Complaint, Chambers alleges that it has been "injured as a result of defendants' violations of 18 U.S.C. § 1962...." Other portions of the complaint support this conclusion through allegations that the defendants' use of the mails and wire communications and "schemes to defraud and destroy the plaintiff" resulted in its injuries. Plaintiff's Complaint, ¶¶ 52, 53, 54. In reviewing the plaintiff's complaint in light of the *Kimmel* and *Eisenberg* decisions, we find that the plaintiff has sufficiently alleged an injury under section 1964(c), which supports a RICO cause of action.

The defendants next argue that Chambers' demand for equitable relief must be stricken since private plaintiffs in RICO cases have no standing to seek such relief. Like most RICO issues, courts are split as to whether or not a district court's equitable powers extend to private plaintiffs in RICO cases or just to cases brought by the United States Attorney General.

18 U.S.C. § 1964(b) provides that the Attorney General may institute RICO proceedings. This same section also provides that a district court "may at any time enter such restraining order or prohibition or take such other actions, including the acceptance of satisfaction performance bonds, as it shall deem proper." In contrast, 18 U.S.C. § 1964(c), which grants private parties a RICO cause of action, is silent as to injunctive relief. Because of the contrasts in these sections, courts have opined that equitable relief is not available to private claimants under RICO. *Dan River, Inc. v. Icahn,* 701 F.2d 278 (4th Cir.1983); *Trane Co. v. O'Connor Securities,* 561 F.Supp. 301 (S.D.N.Y.1983); *Kaushal v. State Bank of India,* 556 F.Supp. 576 (N.D.Ill.1983). Although we recognize these cases, we do not believe they are as persuasive as the cases and articles which hold that equitable relief is available to private parties in RICO claims.

One very strong argument in favor of such a holding is set forth in J. Fricano, *Civil RICO—An Antitrust Plaintiff's Considerations,* in Current Problems in Federal Civil Practice Vol. 1 (Prac.Law Inst.1983). In that article, Mr. Fricano states:

> Strong arguments can be made that Section 1964(a) was enacted for the benefit of private plaintiffs as well as for the government. The type of equitable relief authorized by Section 1964(b) is different from the type of equitable relief district courts are empowered to grant pursuant to Section 1964(a). Section 1964(b) provides only for temporary injunctive relief, such as restraining orders. The fact that 1964(b) authorizes the Attorney General to seek *temporary* relief is not evidence that only the Attorney General is permitted to seek permanent forms of relief ... Indeed, if the availability of injunctive relief were determined by reference to Section 1964(b), rather than Section 1964(a), Section 1964(a) would be superfluous. A reasonable construction of Section 1964, therefore, is that both private litigants and the Attorney General may seek remedies such as divestiture and, in addition, the Attorney General may seek temporary restraining orders.

*Id.* at 827–828, (Emphasis in original).

Another argument in favor of allowing private claimants to seek equitable relief is that RICO specifically contains a statement of purpose that provides that the act should be liberally construed to effectuate its purposes. *See* Pub.L. No. 91–452, 84 Stat. 922 (1970) (Statement of Findings and Purpose). If a private plaintiff were denied the right to sue for equitable relief, this purpose would be frustrated. Fricano, *Civil RICO, supra,* at 830.

Further support for this finding rests not only in the interpretation of the statutory language of 18 U.S.C. §§ 1964(a) and

1964(b), but also in the federal court's inherent power to grant equitable relief to prevent irreparable injury from conduct prohibited by RICO. In a few RICO cases, courts have exercised their inherent equitable powers and granted injunctive relief to a private claimant. *Marshall Field & Company v. Icahn,* 537 F.Supp. 413 (S.D. N.Y.1982); *Vietnamese Fishermen's Association v. Knights of Ku Klux Klan,* 518 F.Supp. 993 (S.D.Tex.1981).

As we believe the drafters of RICO intended for private claimants, as well as the Government, to benefit from the broader forms of relief in furtherance of the purposes behind the Act, we will adopt the holdings of the courts in *Icahn* and *Vietnamese Fishermen's Association,* as well as Mr. Fricano's well-reasoned arguments, and thus hold that private claimants in RICO cases may seek equitable relief. As such, we will deny the defendants' motion that Chambers' claim for equitable relief be stricken.

2. *Specific Arguments*

BFI and BFI of Pa. raise the argument that the plaintiff's claim, as to a violation of 18 U.S.C. § 1962(c), must be dismissed as to them since an entity may not be a "person" and an "enterprise" within the meaning of this section.

■■■ Section 1962(c) prohibits "a *person* employed by or associated with any *enterprise* engaged in, . . ., interstate or foreign commerce," from participating in the enterprise's activities through racketeering. (Emphasis supplied). 18 U.S.C. § 1962(c).[1] While BFI and BFI of Pa. are entities which fall within the statutory definition of either "person" or "enterprise," they may not be used in the same case as both. *Yancoski v. E.F. Hutton & Co.,* 581 F.Supp. 88, 97 (E.D.Pa.1983). In *United States v. Computer Sciences Corp.,* 689 F.2d 1181, 1190 (4th Cir.1982), *cert. denied* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983), the court held that " 'enterprise' was meant to refer to a being different

from, not the same as or part of, the person whose behavior the act was designed to prohibit, and failing that, to punish." *Id.* at 1190. *See also Van Schaick v. Church of Scientology, supra; Parnes v. Heinold Commodities, Inc.,* 548 F.Supp. 20, 23–24 (N.D.Ill.1982).

In the case at hand, the plaintiff's complaint is unclear as to which defendant's activities affected which enterprise and which RICO violation applies to which enterprise since all the RICO claims were grouped into one count. As such, we will order the plaintiff to amend its complaint to be more specific as to which defendants and which enterprises relate to the four subsections of 18 U.S.C. § 1962, preferably by separating the various violations into separate counts. If, after so doing, it is clear that the plaintiff is claiming that BFI and BFI of Pa. are both "persons" and "enterprises" within the context of section 1962(c), we will dismiss that claim as to these two defendants since the enterprise cannot be liable to the plaintiff in a civil RICO claim predicated on a violation of 18 U.S.C. § 1962(c). *Yancoski, supra,* at 97.

BFI and BFI of Pa. also argue that the plaintiff's claim of conspiracy under 18 U.S.C. § 1962(d) must be dismissed as to them because a corporation cannot conspire with its employees.

Once again, the plaintiff's complaint is unclear as to which defendants allegedly conspired, however, it is obvious that *all* defendants were alleged to have conspired in some manner. It is also clear from reading the complaint that the other defendants with whom BFI and BFI of Pa. allegedly conspired were employees of either BFI or BFI of Pa., except Messrs. Humphreys and Phillips.

■■■ It is well settled that a corporation and its employees are not capable of a civil conspiracy. *Yancoski, supra,* at 97. "[A] corporation and its employees do not constitute the 'two or more persons' required for

---

1. 18 U.S.C. § 1961(3) defines a "person" as including "any individual or entity capable of holding a legal or beneficial interest in property." For a definition of "enterprise," see this opinion, *supra.* As previously noted, the complaint names BFI and BFI of Pa. as an enterprise.

a civil conspiracy." *Id. quoting Zelinger v. Uvalde Rock Asphalt Co.,* 316 F.2d 47, 52 (10th Cir.1963). *See Jagielski v. Package Machine Co.,* 489 F.Supp. 232, 233–34 (E.D. Pa.1980).

In following this precedent, it appears that BFI and BFI of Pa. could only conspire with the defendants who were not employed by either company, i.e. Messrs. Phillips and Humphreys, or with each other. In turn, Messrs. Drury, Curtis, Bright, Benko, Pittman and Mazzaro could not be charged with conspiring with BFI and BFI of Pa.

We previously held that the plaintiff's claim of a RICO conspiracy fails to meet the specificity requirements in more ways than one. This is but another example of the questions and confusion that stem from the broad conclusory statements in the plaintiff's complaint. As such, we will order the plaintiff, when amending its conspiracy allegations, to state which defendants conspired with whom. If, after so doing, it appears that the complaint violates the holdings of *Yancoski* and *Zelinger,* the defendants may renew their motions to dismiss the RICO conspiracy claim.

### B. *The Sherman Act Claims*

In Count II of its complaint, Chambers incorporates the facts and allegations set forth in the RICO count (Count I) and then concludes that the defendants' conduct as described in Count I "constitutes a combination and conspiracy in restraint of trade ... (15 U.S.C. 1)," Plaintiff's Complaint ¶ 62, and "constitutes a monopolization, an attempt to monopolize, and a combination and conspiracy to monopolize trade and commerce ... (15 U.S.C. 2)." *Id.* at ¶ 63.

The defendants seek a dismissal of Count II as to both claims on the grounds that the plaintiff failed to allege a claim under Sections 1 and 2 of the Sherman Act.

### 1. *Section 1, 15 U.S.C. § 1*

■ Section 1 of the Sherman Act, 15 U.S.C. § 1, prohibits "[e]very contract, combination ..., or conspiracy, in restraint of trade ..." 15 U.S.C. § 1. A violation of Section 1 is easiest to prove if it is the plaintiff's theory that the defendants committed a *per se* violation. *Northern Pacif-*ic *Ry. v. United States,* 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958); *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). *See e.g. Sitkin Smelting & Refining Co. v. FMC Corp.,* 575 F.2d 440 (3d Cir.1978); *United States v. Pennsylvania Refuse Removal Association,* 242 F.Supp. 794 (E.D.Pa.), *aff'd* 357 F.2d 806 (3d Cir.1965).

In the complaint, Chambers alleges that the defendants' use of surrogate refuse company and bribes allowed them to fix prices by rigging bids (Plaintiff's Complaint ¶¶ 35–37, 47); a *per se* violation of Section 1. *See* L. Sullivan, *Handbook of the Law of Antitrust* § 70 (1977). When deciding Rule 12(b)(6) motions, such allegations must be considered to be true. *Miree v. DeKalb County,* 433 U.S. at 27 n. 2, 97 S.Ct. at 2492 n. 2 (1977). As such, we find that the plaintiff's complaint sufficiently alleges a *per se* violation of Section 1 of the Sherman Act and therefore, we will not dismiss this claim.

### 2. *Section 2, U.S.C. § 2*

Section 2 of the Sherman Act, 15 U.S.C. § 2, prohibits monopolizations, attempts to monopolize and combinations or conspiracies to monopolize "any part of the trade or commerce among the several States ..." The defendants argue that the plaintiff has failed to allege any claim under this section.

■ To establish a charge of actual monopolization under Section 2, the plaintiff must allege three essential elements: 1) that the defendants possess monopoly power in the relevant market, 2) that the monopoly power was willfully acquired or maintained, and 3) that the plaintiff suffered a causal "antitrust" injury. *California Computer Products, Inc. v. International Business Machines Corp.,* 613 F.2d 727, 735 (9th Cir.1979); *Laurence J. Gordon, Inc. v. Brandt, Inc.,* 554 F.Supp. 1144, 1155 (W.D.Wash.1983); *Structure Probe, Inc. v. The Franklin Institute,* 450 F.Supp. 1272 (E.D.Pa.1978).

■ "Monopoly power" is the power to control prices or exclude competition.

*United States v. Grinnell Corp.*, 384 U.S. 563, 571, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966); *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 404, 76 S.Ct. 994, 1012, 100 L.Ed. 1264 (1956); *Columbia Metal Culvert Co. v. Kaiser Aluminum & Chemical Corp.*, 579 F.2d 20 (3d Cir.1978). Monopoly power can be determined only in the context of the relevant market in which the monopoly is claimed, *Laurence J. Gordon, Inc., supra*, which is comprised of the product market and the geographic market. *Id.*

■■■ In the case at bar, the plaintiff alleges that BFI is a national company which competes nationwide in the refuse and waste collection business and which has the ability to easily move personnel, funds and equipment throughout the country. BFI of Pa., BFI's wholly-owned subsidiary, is a successful waste collection company in Western Pennsylvania. Through their employees and agents (the individual defendants), these waste collection companies created a scheme whereby smaller refuse companies in Western Pennsylvania were bought out, thus giving the defendants control over a substantial portion of the waste collection business in Western Pennsylvania, the relevant market area. *See* Plaintiff's Complaint, ¶ 19. Other companies were excluded from competition because the defendants used surrogate companies, bid-rigging, bribes and misrepresentations. These allegations are sufficient to establish the first element of an actual monopolization claim; i.e. that the defendants achieved the ability to control prices and exclude competition in the waste collection business in Western Pennsylvania, thus they possess monopoly power in the relevant market.

■■■ Even assuming that the defendants possess monopoly power in the relevant market, Section 2 of the Sherman Act would not be violated unless the plaintiff shows "the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Laurence J. Gordon, Inc., supra*, at 1157, *quoting United States v. Grinnell Corp.*, 384 U.S. 563,

570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966). A plaintiff need not allege specific intent to eliminate competition, but he must show that the complained of acts were unreasonably restrictive of competition. *California Computer Products, Inc., supra*, at 735–36.

■■■ Chambers alleges that the defendants initiated a campaign in the late 1970s designed to give the defendants total control over the waste collection business in Western Pennsylvania. Plaintiff's Complaint, ¶ 19. This campaign was to be carried out by the implementation of various schemes and bid-rigging plans. It is this campaign that the plaintiff contends resulted in the defendants' acquisition of monopoly power. We believe that allegations of planned "campaigns" and "schemes" clearly support a claim of *willful* acquisition of monopoly power, and therefore, the plaintiff has sufficiently alleged the second element of an actual monopolization charge.

■■■ In order to establish the third element of a claim of actual monopolization, an "antitrust injury," the plaintiff must allege an injury "of the type the antitrust laws were designed to prevent and which flows from the alleged antitrust violations." *Laurence J. Gordon, Inc., supra*, at 1157. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977) (The antitrust laws were enacted for the protection of competition and not competitors.) In other words, a plaintiff in an action under the Sherman Act must allege an anticompetitive effect or facts from which such an effect can be inferred. 24 *Federal Procedure* § 54: 248 (L.Ed. 1984).

■■■ The only reference to an injury purportedly suffered by Chambers due to the defendants' actions is in paragraph 64 of the complaint which states,

> [P]laintiff has been injured in its trade and business as a result of defendants' violations ... by reason of losing contracts and suffering damage to its business reputation, and defendants are therefore liable to plaintiff ...

Plaintiff's Complaint, p. 16. The injuries which allegedly occurred due to the defendants' activities are not "antitrust" injuries within the meaning of the Sherman Act. Instead, what Chambers has alleged is an injury to its *own* business and reputation which are sufficient allegations in claims under § 4 of the Clayton Act (15 U.S.C. § 15). 24 *Federal Procedure*, L.Ed. § 54:247 (1984). *See also Dairy Foods, Inc. v. Dairy Maid Products Coop.*, 297 F.2d 805 (7th Cir.1961); *Swank v. Patterson*, 139 F.2d 145 (9th Cir.1943). However, such allegations will not support a claim under Section 2 of the Sherman Act which requires a showing of injuries to competition as a whole. We, therefore, will give Chambers the opportunity to amend its complaint to assert, if possible, allegations of anticompetitive injuries as a result of the defendants' complained of actions.

■ In order to show a claim under Section 2 of attempted monopolization, the plaintiff must first allege, 1) specific intent to control prices or destroy some part of commerce; 2) predatory or anticompetitive conduct directed toward accomplishing the unlawful purpose, and 3) a dangerous probability of success. *Laurence J. Gordon, Inc., supra*, at 1158. *See also Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369 (10th Cir.1979). As with all antitrust claims, the plaintiff must also allege that the harm suffered is an "antitrust" injury. *California Computer Products, Inc., supra.*

■ A claim based on an attempt to monopolize *must* allege the defendants' *specific intent* to control prices or destroy commerce, or it is deficient. *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369 (10th Cir.1979); *Middlebrooks v. City of Eustis*, 563 F.Supp. 1060 (M.D.Fla. 1983); *Hughes Automotive, Inc. v. Mid-Atlantic Toyota Distributors, Inc.*, 543 F.Supp. 1056 (D.Md.1982). It is not sufficient for the plaintiff to set forth, by means of general factual allegations, that the defendant has committed a violation of Section 2 of the Sherman Act, without specifically addressing each element. *Middlebrooks, supra* at 1061.

■ In reviewing Chambers' complaint, we can find no allegation that specifically addresses the defendant's intent to monopolize the relevant market. In paragraph 19, the plaintiff states that BFI *initiated* a campaign to achieve total control of the waste collection business in Western Pennsylvania. Although we believe an allegation that one initiated a campaign is sufficient to establish "willfullness" as required under a claim for actual monopolization, we do not believe that the stronger allegation of "specific intent" is met by such general statements. Furthermore, this statement regarding a campaign applies only to BFI and BFI of Pa. No mention of the individual defendants is made in that paragraph, therefore, we cannot even infer from that language specific intent on the part of the other defendants.

The plaintiff argues that it need not allege specific intent since it has alleged predatory pricing which, by itself, is evidence of intent. In paragraph 49 of the complaint which is entitled "Predatory Pricing and Malignment," the plaintiff alleges,

Beginning in 1978 and continuing through the present the defendant, BFI, primarily through its Sales Manager D. Edward Benko, has successfully conducted a campaign of taking away customers of Chambers by offering below-cost prices, rebates, and free service ...

■ It is well settled in the law that requisite intent can be inferred from conduct such as predatory price cutting. L. Sullivan, *Handbook of the Law of Antitrust* § 51 (1977). *See e.g. Porto Rican American Tobacco Co. v. American Tobacco Co.*, 30 F.2d 234 (2d Cir.), *cert. denied* 279 U.S. 858, 49 S.Ct. 353, 73 L.Ed. 999 (1929); *Middlebrooks, supra.* Thus, the allegation in paragraph 40 of the complaint is sufficient to establish specific intent on the parts of BFI, BFI of Pa. and Edward Benko, the three defendants named in that paragraph. There are no claims, however, that the other defendants were involved with the predatory pricing, and we will not stretch this inference so far as to reach them.

The defendants next argue that the plaintiff has failed to specifically allege that the defendants had a dangerous probability of success; the third element in a claim for attempted monopolization under Section 2. Such an allegation is essential to support such a claim. *See Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338 (3d Cir.1975); *Robinson v. Magovern*, 521 F.Supp. 842 (W.D.Pa.1981).

■ The plaintiff argues that it can be inferred from the facts in the complaint that the defendants had a dangerous probability of success. Inferences, however, are not sufficient to establish the necessary elements of an antitrust claim. *Middlebrooks, supra.*

Courts have dismissed Section 2 claims of attempted monopolization for the failure to plead specific intent and the dangerous probability of success. *Middlebrooks, supra; Hughes Automotive, Inc., supra. See also* 24 *Federal Procedure* § 54:241 (L.Ed. 1984). Since, however, we are allowing the plaintiff to amend its complaint to correct the deficiencies in its RICO claim and its allegations of "antitrust" injury, we will afford the plaintiff the opportunity to also amend its claim of attempted monopolization to include the requisite elements.

■ Even if the plaintiff is able to amend its complaint to correct the problems raised, the defendants argue that the Sherman Act claims must be dismissed since the activities of the defendants have no effect upon interstate commerce. In order for a federal court to have subject matter jurisdiction over a Sherman Act claim, it is necessary that the claim either relates to activities which occurred in interstate commerce, or, if local activities, had some substantial and adverse effect upon interstate commerce. *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975); *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *Mortensen v. First Federal Savings & Loan Association*, 549 F.2d 884 (3d Cir. 1977); *DeGregorio v. Segal*, 443 F.Supp. 1257 (E.D.Pa.1978).

The defendants' contention is that the activities of the defendants which are at the core of the plaintiff's claim occurred only in Western Pennsylvania, and since their waste refuse business is conducted in only one state, their activities are not within interstate commerce nor do they affect interstate commerce. We do not agree with the defendants' assertion.

■ Courts liberally construe the interstate commerce connection at the pleading stage, *Crane v. Intermountain Health Care, Inc.*, 637 F.2d 715 (10th Cir.1980), and it is not necessary for the plaintiff to allege specifics such as the amount of affect on interstate commerce, *Syracuse Broadcasting Corp. v. Newhouse*, 271 F.2d 910 (2d Cir.1959), or that it itself affects interstate commerce. *Id.*

■ As we have previously noted when discussing the issue of interstate commerce as it applied to RICO, the plaintiff has alleged that the defendants' activities affect interstate commerce. All of the defendants are alleged to be involved in the purchase and finance of equipment through interstate commerce. BFI allegedly participates nationwide in the refuse collection business which results in the interstate movement of personnel, equipment and funds. The individual defendants (who are named in Count II through the incorporation of Count I), through their close work with BFI, BFI of Pa., Mazzaro, Inc. and Horse Trucking, Inc., affected interstate commerce. These allegations are sufficient, *at this point in time*, to withstand a motion to dismiss for lack of subject matter jurisdiction. *See e.g. Hospital Building Co., supra,* (Purchasing of hospital supplies from out-of-state is sufficient nexus); *Englert v. City of McKeesport*, 736 F.2d 96, 98 (3d Cir.1984), (Payment of fees for professional service is "commerce"); *United States v. Georgia Waste Systems, Inc.*, 731 F.2d 1580 (11th Cir.1984), (The purchase of out-of-state equipment and transferring of funds from out-of-state is sufficient nexus); *Tiger Trash v. Browning-Ferris, Inc.*, 560 F.2d 818 (7th Cir.1977),

(Transportation of trash across state lines meets the jurisdictional test.)

### C. *Jurisdiction over BFI and John Drury*

BFI and John Drury, chief executive officer of BFI, argue that we must dismiss the complaint as to them for want of personal jurisdiction. We will first consider this argument as it applies to Mr. Drury.

Because of the extraterritorial service of process provisions in RICO and the Clayton Act, the question of personal jurisdiction over the defendants is really whether venue is proper. *Eastman Kodak Company of New York v. Southern Photo Materials Co.*, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927). Under RICO, venue is proper in "any district in which [the defendant] resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). Under the Clayton Act, a Sherman Act claim can be brought against *a corporation* in the judicial district in which it is an "inhabitant," is "found, or transacts business." 15 U.S.C. § 2. The Clayton Act does not provide for extraterritorial service on individuals, 15 U.S.C. § 15, therefore, to gain jurisdiction over Drury, the plaintiff must rely on RICO or the Pennsylvania long-arm statute. *See* 42 Pa.C.S.A. § 5301, *et seq. See Orange Theatre Corp. v. Rayherstz Amusement Corp.*, 139 F.2d 871, 875 (3d Cir.); *cert. denied*, 322 U.S. 740, 64 S.Ct. 1057, 88 L.Ed. 1573 (1944). In addition to the RICO statute and the long-arm statute, courts have recently held that the general venue provisions of 28 U.S.C. § 1391(b) are supplemental to the venue provisions of RICO and the Sherman Act. *Eaby v. Richmond*, 561 F.Supp. 131 (E.D.Pa.1983) (RICO); *Farmers Bank v. Bell Mortgage Corp.*, 452 F.Supp. 1278 (D.Del.1978) (Clayton Act). *See also Superior Oil Co. v. Andrus*, 656 F.2d 33, 36 N. 3 (3d Cir.1981) (dictum). Therefore, we may also consider whether this is "the judicial district in which the claim arose ...", 28 U.S.C. § 1391(b), in determining whether venue, and hence, jurisdiction, is proper in the Western District of Pennsylvania.

In support of his motion to dismiss for lack of jurisdiction, Mr. Drury submitted an affidavit in which he states that he is a resident of Texas, he has never resided or worked in Pennsylvania, nor does he own any property located within Pennsylvania, and that he has not transacted any business within the Commonwealth. *See* Drury Aff.

In response to this affidavit, the plaintiff has not filed any counter-affidavit, but instead, points to its complaint which states in conclusory terms that "each of the acts [alleged in the complaint] were done pursuant to the direction of ... John Drury." Plaintiff's Complaint, ¶ 52. The plaintiff also points to deposition testimony elicited from a case in the Court of Common Pleas of Allegheny County to support its conclusion. The action in Common Pleas, however, is not related to this case, and in fact, we specifically held that we will not incorporate the testimony from that case into the case before us since the issues and parties were dissimilar. *See* Order of Court, March 12, 1984. Thus, we cannot rely on facts and testimony from the state case in deciding this issue. We will only look to the affidavits and testimony filed in the case before us.

The plaintiff always has the burden of proving personal jurisdiction when it is challenged. *DiCesare-Engler Productions, Inc. v. Mainman Ltd.*, 81 F.R.D. 703 (W.D.Pa.1979). *See also McNutt v. GMAC*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *McSparran v. Weist*, 402 F.2d 867 (3d Cir.1968); *Indian Coffee Corp. v. Procter & Gamble Co.*, 482 F.Supp. 1098 (W.D.Pa.1980). When attempting to meet this burden, "[r]ather than resting on bare allegations of the complaint, the plaintiff is obligated to come forward with facts, by affidavit or otherwise, in support of personal jurisdiction." *Id.* at 705. In the case before us, the only facts we have are those contained in Mr. Drury's affidavit. These facts do not support a finding of jurisdiction under the RICO Act, the Clayton Act or the Pennsylvania long-arm statute. In addition, these facts tend to prove that Mr. Drury did not even have the minimum contacts with the

forum needed to satisfy due process under *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). As such, we have the power to dismiss the complaint as to Mr. Drury for want of personal jurisdiction. The plaintiff, however, argues that the necessary facts needed to prove jurisdiction are within the exclusive control of the defendants, and through discovery, it will be able to show that Mr. Drury directed tortious activity in Pennsylvania from outside the state, thus bringing him within the Pennsylvania long-arm statute. Since we are allowing the plaintiff to conduct discovery before amending other sections of the complaint, we will afford it the same opportunity as to this issue. However, we will only give the plaintiff thirty days to gain any necessary facts to support its claim of personal jurisdiction. This case has been in existence for nine months, and discovery has been in progress for almost as long, during which time such facts should have been obtained. We are aware of problems which have continually plagued the discovery period. However, we believe that facts needed to refute Mr. Drury's affidavit, if such exist, could have been uncovered during these past months.

BFI also filed an affidavit in support of its motion to dismiss for lack of jurisdiction. Stephen L. Harris, vice-president of BFI, made the affidavit on behalf of BFI which provides that BFI is a corporation organized under the laws of Delaware and headquartered in Texas. Mr. Stephens goes on to state that BFI has no Pennsylvania office nor does it have any officers or employees transacting business in Pennsylvania. Although BFI owns the stock of BFI of Pa., the affidavit attests that BFI and BFI of Pa. are separate corporations and each has their own officers, corporate records and financial books. Each makes their own decisions as to purchases, suppliers, public relations, contract prices and hiring practices. *See* BFI Aff. In other words, "[t]he daily business affairs of BFI-Pennsylvania are conducted or transacted by BFI-Pennsylvania and are not dictated, directed, controlled or managed by BFI." *Id.* at ¶ 14.

The plaintiff argues, though not supported by affidavits or facts, that BFI of Pa. is the alter ego of BFI and, as such, BFI has sufficient business contacts with Pennsylvania. *See e.g., Cannon Manufacturing Co. v. Cudahy Packing Co.,* 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925); *Indian Coffee Corp., supra.* Accord 2 *Moore's Federal Practice* § 4.25(6). It points to *Tiger Trash v. Browning-Ferris Industries,* 560 F.2d 818 (7th Cir.1977), a case unrelated to the one at bar, where the Court, relying on evidence presented to it, held that BFI operates in such a way that it appears as *one* company operating nationwide. *Id.* at 824. We recognize the factual findings in *Tiger Trash,* however, we are not bound by such a decision. The court in *Tiger Trash* was given the opportunity to read deposition transcripts and hear testimony prior to making its Findings of Fact. We have not had this opportunity and the only sworn facts before us are those contained in the BFI affidavit. We find unpersuasive the argument that facts from one case automatically apply to another unrelated case when a party is the same. Unless the plaintiff can provide some facts in the form of a sworn affidavit or testimony within thirty days which support its conclusion that BFI of Pa. is a mere alter ego of BFI, we will dismiss the complaint as to BFI for want of jurisdiction.

### D. *Pendent Jurisdiction*

Since we have not, at this time, dismissed the RICO and Sherman Act claims in the plaintiff's complaint, we need not address the arguments made by BFI and BFI of Pa. that we must dismiss the state claims in Counts III and IV for lack of pendent jurisdiction.